STATE of Missouri, Respondent,

v.

Ollie DIXON, alias Richard Divonne, Appellant.

No. 51898.

Supreme Court of Missouri,
Division No. 1.

Feb. 13, 1967.

Norman H. Anderson, Atty. Gen., Jefferson City, Charles C. Hatley, Asst. Atty. Gen., New Madrid, for respondent.

E. J. Murphy, H. H. McNabb, Jr., Harold L. Caskey, Butler, for appellant.

SEILER, Justice.

Defendant was charged with second degree burglary and stealing, by breaking into a general store at Rockville, Bates County, and stealing merchandise and foodstuffs therefrom. The information also charged prior felony convictions. Tried to a jury, defendant was found guilty October 23, 1965. The court fixed his punishment at fifteen years' imprisonment. Defendant has appealed.

Defendant's appointed counsel contend, first, error in permitting testimony that defendant at first gave an alias or different name, thus (it is claimed) implying to the jury that defendant had a criminal record, and, second, error in admitting certain incriminating statements of the defendant without his first having been warned of his constitutional rights.

The city marshal testified he, in response to a telephone call from a man who lived near the scene, went to the store about midnight, observed the store lights were out and a parked car on the west side of the store, right at the corner; that he stood under a tree across the street, and after waiting approximately forty-five minutes, saw the defendant come out the front door with an armload of bread, bologna, milk and bananas, whereupon he halted defendant, made him drop the articles and then walk to the middle of the street and stretch out prone while the marshal observed to see if anyone else was in the store. After deciding there was not, the marshal had defendant lean against a tree and searched him, discovering three hunting knives and scabbards, which the store owner subsequently identified (along with the items dropped on the sidewalk) as merchandise from the store. The marshal took defendant back to the store, sat him down and called the sheriff, who arrived in about an hour. The two padlocks on the outer and inner front doors were gone and the marshal found them in the gutter where defendant later said he had thrown them.

Defendant did not offer any evidence.

On defendant's first point the record shows that the marshal, who talked to defendant while waiting for the sheriff, testified that when he asked defendant his name defendant said that "his name was Richard Divonne". Later, a deputy sheriff testified, without objection, that he heard defendant tell the sheriff his name was Richard Divonne and further, over objection, that at a later interrogation by the prosecuting attorney defendant said his name was Ollie Dixon. The word "alias" was not mentioned and all the state showed was that when the arresting officer and later the sheriff asked defendant his name he said "Richard Divonne" and subsequently when the prosecuting attorney asked, defendant said "Ollie Dixon". This is not error.

On defendant's second point, the record shows the city marshal talked with defendant while waiting for the sheriff, that the marshal asked defendant why he did it, that defendant answered he broke in because he was hungry; that he talked to defendant about the doors and defendant told him where he had thrown the locks. There was no showing the marshal said anything to defendant about constitutional rights.

The sheriff, who said he interrogated the defendant at the scene for approximately three-fourths of an hour, could not remember whether he informed defendant he had a right to have an attorney present, or that anything he might say might be used against him. The sheriff testified he examined the parked car on the west side of the store building and found therein about twelve cartons of cigarettes, a gas can, siphoning hose, some clothing and a pinch bar; that he asked defendant whether it was his car and defendant said it was.

Although counsel for defendant refer to defendant's statements as a "confession" and contend the court erred in not first establishing outside the hearing of the jury that the "confession" was voluntary, there is no such point raised in the motion for new trial, nor was any contention made at time of trial that the statements were not voluntary. Counsel's real reliance is that the statements were involuntarily made as a matter of law or otherwise inadmissible for the reason defendant was not first apprised of his constitutional right to remain silent, citing Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977, and Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.

This court has twice held it will not expand Escobedo beyond its facts, State v. Howard (Mo.Sup.) 383 S.W.2d 701, 703, and State v. Collins (Mo.Sup.) 394 S.W.2d 368, 371, both decided prior to Miranda, wherein the United States Supreme Court discussed the broad implications of Escobedo in language which does lend some support to counsel's contentions. For example, in Miranda the court said that state and federal courts "in assessing its implications, have arrived at varying conclusions" and that the court granted certiorari in Miranda "further to explore some facets of the problems, thus exposed" and "to give concrete constitutional guidelines for law enforcement agencies and courts to follow". The court pointed out the Escobedo holding "stressed the fact that the police had not advised the defendant of his constitutional privilege to remain silent at the outset of the interrogation", which "was no isolated factor, but an essential ingredient" in the Escobedo decision, 384 U.S. 440–442, 465, 86 S.Ct. 1610–1611, 1623, 16 L.Ed.2d 704–705, 718. The court related the denial of Escobedo's request for his attorney to the undermining of his exercise of his privilege to remain silent. But as we read Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882, for the precise holding of Escobedo to apply there must be present the element of a request for counsel by the suspect and a denial by the police, which is not present here, and since the United States Supreme Court was not persuaded that its holding in Miranda was fully anticipated by the implications of Escobedo, it held that the "additional guidelines for situations not presented by that case" would

be available only to persons whose trials had not begun as of June 13, 1966.

 Therefore, Escobedo and Miranda do not apply and the test which must be applied under the established Missouri law to the admissibility of defendant's statements is that of voluntariness, State v. Mc-Culley (Mo.Sup.) 327 S.W.2d 127, 130. No element of coercion appears in the questions put by the marshal or sheriff or in the responses made by defendant. The statements were not volunteered, but a statement can be voluntary even though not volunteered, Shultz v. United States (CCA 10) 351 F.2d 287, 288.

Judgment affirmed.

All concur.