**STATE of Missouri, Respondent,**

v.

**James Dale EDWARDS, Appellant.**

No. 52068.

Supreme Court of Missouri,
Division No. 1.

Dec. 9, 1968.

**2**

Norman H. Anderson, Atty. Gen., Jefferson City, Dennis J. Quillin, Special Asst. Atty. Gen., Clayton, for respondent.

J. Brendan Ryan, St. Louis, for appellant.

WELBORN, Commissioner.

This is an appeal by James Dale Edwards from a judgment and sentence of life imprisonment for murder in the first degree.

On February 23, 1965, Carol Sussex was found dead in her apartment in Edmundson Terrace, St. Louis County. Her half-clothed body was lying on a bed and a piece of electric lamp cord was wrapped around her neck. The investigation resulting in the discovery of the body began when Miss Sussex failed to report to work on the morning of February 23.

Police investigation revealed that, after work the preceding evening, Miss Sussex had gone to the Flaming Pit restaurant and cocktail lounge in the Village Square Shopping Center in Hazelwood. She arrived

there at around 5:30 P.M. and met acquaintances from her place of employment. In the course of the evening at the Flaming Pit, Miss Sussex became acquainted with James Dale Edwards. When the bar closed, at around 10:00 P.M., Miss Sussex, Edwards and the bartender were the only persons remaining in the bar. Miss Sussex left the Flaming Pit shortly after the closing time and Edwards departed a few minutes after Miss Sussex had left. The two were seen together on the parking lot near the Flaming Pit shortly thereafter.

At around 6:00 P.M. on February 23, Edwards was taken to the St. Louis County Police Department Headquarters and questioned about his activity on the preceding evening. He told the questioning officer that he had met Miss Sussex at the Flaming Pit, but that he did not see her after she left the cocktail lounge after it closed. Sometime later in the evening, Edwards was identified in police line-ups as the person who had been seen with Miss Sussex at Luigi's restaurant. The two had arrived at the restaurant around midnight, eaten, and left after being there about an hour.

Upon being confronted by police officers with this identification, Edwards, at around 11:00 P.M. on February 23, after first denying any connection with the victim's death "blurted out": "Yes, I killed her. Call the newspapers. Call the police." On subsequent questioning that night, Edwards made contradictory statements about his involvement, but when he was either unable or unwilling to furnish the police with any details of the offense, Edwards was released with no charges being filed against him. There is some indication that, in the course of the evening, Edwards underwent a polygraph test at State Highway Patrol offices, but just what occurred is not clear.

At around midnight on March 3, Edwards was arrested by St. Louis County police officers and taken to police headquarters. There he was again questioned about the death of Miss Sussex. He at first denied that he had killed her, but, after about an hour's questioning, he admitted the killing and, at around 3:30 A.M., a court reporter was called to headquarters and a statement, in question and answer form, was taken from Edwards and reduced to writing. According to the statement, Edwards said:

"Well, to begin with my wife whom I was with earlier that day said that everything between us in the past was over with and finished with. So I no longer cared about anything at all. So, I just decided that the best thing to do would just be to do something terrible where I would not only have to hurt myself but hurt my wife. So I thought I would just commit some crime such as murder and then in retaliation that would affect her, to prove to her that I didn't care about her, life without her. So I was still thinking about all of this and when I got to the Flaming Pit and struck up a conversation with Carol Sussex I thought that this was the chance just to end everything because in the past I would say something to my wife and she never would believe anything."

He said that, after they had eaten at Luigi's, "[w]e got in and drove to her apartment in Bobbie Downs apartment buildings. We got to her front door and she said 'Good night' after she had unlocked the door. I shoved her inside the door and she turned around to push me back out. Then I grabbed her around the throat and started choking her and she struggled with me saying 'What for?' So I told her that I didn't care about anything any more and the reason I was going to kill her was because my wife was through with me so I wanted to end it all and in some ways hurt my wife a little more. We both struggled to the floor and she was almost completely unconscious so I grabbed a lamp cord and wrapped that around her throat until she was completely still. I then dragged the body into the bedroom and threw her on the bed, taking part of her clothes off to make it appear that she had been molested, then scattering her purse on the bathroom floor and taking her money to add a little more to the confusion.

"Then I immediately left and went out the front door and walked to my car and drove straight home and went to bed, and thought over everything that had happened knowing that since I was last seen with her in a public place I would eventually be caught."

At the trial, the written statement was introduced in evidence and there was testimony about the defendant's previous oral admissions.

The case was submitted as one of murder in the first degree and the jury's verdict was guilty of that offense.

On this appeal, the first point of error relates to the giving of Instruction No. 3 which read as follows:

"You are instructed that the intent with which an act is done is one of the facts for you to determine from all the evidence in this case. This intent need not be proved by direct and positive testimony, but in the absence of such testimony, it may be inferred by you from all the facts and circumstances in evidence surrounding and attending the act having reference to and bearing upon the question of intent, if you find and believe from the evidence beyond a reasonable doubt that such facts and circumstances have been proved in this case."

■ Appellant contends that the giving of this instruction was error because the instruction submits only an abstract statement of law and because it was totally unnecessary and served to confuse and mislead the jury. The objection that the instruction amounted to only an abstract statement of law does not appear in the motion for new trial and no such objection was otherwise made in the trial court. That objection is, therefore, not properly before us. State v. Demaree, Mo.Sup., 362 S.W.2d 500, 505 [6–8], 17 A.L.R.3d 312.

■ As for the instruction being unnecessary, appellant states that the only issue was whether defendant was guilty of murder in the first degree or not. Ac-cording to appellant, since no possible lesser offenses were involved, there was no issue as to intent. However, the court, in its verdict-directing instruction, defined "wilfully" as "intentionally, not accidentally." That was an element of the offense which the state had to prove and it cannot be said that there was no issue of intent.

The appellant does not point out how the instruction might have been misleading or confusing. We conclude that no error has been shown to have been involved in the giving of this instruction.

Appellant's next assignment of error relates to the failure of the trial court to sustain the defendant's motion to suppress any statement made by him to the police. At the trial, defendant's counsel objected to the admission of statements of the defendant on the grounds that they were not voluntary and on the further grounds that statements were obtained "in violation of his constitutional rights as guaranteed by the State and Federal constitutions in that he was not represented by counsel at the time such statements were made, and was not properly advised of his right to counsel and was not permitted to consult with counsel prior to the making of such statements."

At the trial and prior to any reference to the defendant's statements to police, a hearing was held by the court, outside the presence of the jury, on the voluntariness of the defendant's statements. The only evidence offered in such hearing was the testimony of two interrogating police officers. Both testified that at neither the February 23 nor March 3–4 interrogation was defendant threatened or coerced in any way, physically abused or promised leniency. The record is silent as to any warning which might have been given defendant about his rights in regard to such questionings. Following the hearing, the trial court overruled the motion to suppress.

On this appeal, appellant states that "[t]he Court erred in overruling objections of appellant on the admissibility of the alleged written and oral statements of appel-

lant because of the failure of the police officers to advise appellant of his rights to counsel prior to making any statement and the trial court's failure to making (sic) a finding that the statements admitted in evidence were voluntarily made prior to their submission to the jury."

This case was tried in December, 1965, and, therefore, predates Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974. It does not, as appellant contends, involve a situation fully comparable with that presented in Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977. There is no contention here that appellant, while in police custody, was denied the right to consult with counsel then present and available. See State v. Dixon, Mo.Sup., 411 S.W.2d 185, 186 [1]. "Therefore, Escobedo and Miranda do not apply and the test which must be applied under the established Missouri law to the admissibility of defendant's statements is that of voluntariness, * *." State v. Dixon, supra, 411 S.W.2d 187 [2, 3]. Failure on the part of the interrogating officers to advise defendant about his right to counsel does not alter the character of an otherwise voluntary statement, and, with the exceptions noted below, no contention is advanced that the statements were otherwise involuntary. State v. McCulley, Mo.Sup., 327 S.W.2d 127, 130 [1]; State v. Laspy, Mo.Sup., 323 S.W.2d 713, 717 [5, 6].

The other factor here advanced is that his original detention was, in part, unlawful, and that his statements during such period of unlawful detention should have been excluded. No objection on this ground was advanced in the motion to suppress, in objection to the admission of defendant's statements, or in the motion for new trial. Therefore, such objection is not properly before us on this appeal. See State v. Spica, Mo.Sup., 389 S.W.2d 35, 56 [39].

Appellant's objection that no express finding of the voluntariness of his statements was made by the trial court prior to their presentation in evidence was based on state procedural grounds, reliance being upon State v. Gower, Mo.Sup., 418 S.W.2d 10, 13. As above noted, the trial court did conduct a preliminary hearing on the question of voluntariness, following which the appellant's objections were overruled without an express finding by the trial court. Inasmuch as the objection raised is fundamentally based upon the requirements of Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908, 1 A.L.R.3d 1205, and Sims v. State of Georgia, 385 U.S. 538, 87 S.Ct. 639, 17 L.Ed.2d 593, this court, after submission of the case, made an order, similar to that set out in State v. Glenn, Mo. Sup., 429 S.W.2d 225, 237–238 [30], calling upon the trial court to make an express finding on the issue of the voluntariness of appellant's statements. Following the procedure established in State v. Glenn, supra, the trial court did make an express finding that the statements "were voluntarily made and the Court further states that this was the Court's belief and finding at the time of trial." Such finding was made following presentation to the court, with the appellant present and counsel being afforded an opportunity to present arguments on the matter.

In view of the finding of the trial court, we conclude that there was no error prejudicial to the appellant in the trial court's failure to make such an express finding prior to the admission of testimony concerning the statements. State v. Glenn, supra.

Appellant's next objection relates to the trial court's ruling during the examination of the state's witness, Major Vasel of the St. Louis County Police Department. Major Vasel had testified about defendant's statement, when first interrogated by police on February 23, that he had not seen the victim after she left the Flaming Pit. Vasel had also testified that sometime after eleven o'clock that evening, after witnesses had identified defendant as having been

with the victim at Luigi's, the defendant stated that he killed the victim.

In the state's further examination of Vasel, he was asked:

"Q Now, prior to the time he was questioned, sometime around 11 o'clock on February 23rd, the first day that you spoke with him, had you or any other officer in your presence called to his attention information that you had received from any other witnesses in the case?

"MR. RANKIN: I object to that as being hearsay; the question calls for hearsay.

"MR. McSWEENEY: It's part of the same conversation, your Honor.

"THEREUPON, the last question was read back.

"THE COURT: The objection will be overruled.

"A Yes, sir, we did."

On this appeal, appellant contends that the trial court's ruling was erroneous. Appellant relies upon State v. Chernick, Mo. Sup., 278 S.W.2d 741, and State v. Blocton, Mo., 394 S.W.2d 323, in which it was held that testimony which, by clear inference, showed that an alleged accomplice had implicated the defendant in the offense involved, was just as much hearsay and objectionable as the implicating statement itself would have been.

■ In Chernick and Blocton, the extrajudicial statement of a third person was attempted to be used as evidence of the guilt of the accused, a clear-cut hearsay rule violation. That is not the situation here presented. Although it is argued that the question infers that the appellant was told of incriminating evidence which had been gathered, the immediately following questions show that the question objected to referred to the information, obtained from the waitresses at Luigi's, that the defendant and the victim had been at that restaurant at around midnight. The waitresses had already testified to having seen the defendant and Miss Sussex. This, of course, was in conflict with the story defendant first told the police, that he had not seen Miss Sussex after she left the Flaming Pit. Thus, the inquiry was aimed at and did nothing more than point up the fact that the defendant's original admission, at the time of his original interrogation, followed his confrontation by information which cast doubt upon his first version of the events of the previous evening. The situation is not controlled by Chernick and Blocton. We find no error in the court's ruling.

Appellant's next objection relates to the following questions asked on his cross-examination:

"Q Prior to the time you say that Major Vasel made these statements with respect to your wife, she had filed suit against you for divorce; is that correct? A Yes. It had been in the process for sometime.

"Q In January, just a month before, hadn't there been a hearing in which she had filed a motion against you for temporary support?

"MR. RANKIN: I will object to getting into details of the divorce case, your Honor. I mean, it's no part of this law suit and I object to it.

"THE COURT: The objection to the last question will be overruled.

"Q (Mr. McSweeney) There had been just in January a hearing on a motion in which she was as part of the divorce case seeking support and alimony from you? A Yes."

■ Appellant contends that these questions went into matters affecting his character, which he had not placed in issue. We believe that the appellant's objection is not well taken. On his direct examination appellant testified that he was the father of two children. He also brought his marital status into the case by tesifying that his admissions of guilt were induced, in part, by police officers' statements that the appellant's wife would have nothing further

to do with him. The questions asked on cross-examination were within the legitimate scope of the appellant's testimony on his direct examination. The matters were not offered on the issue of character and any remote connection which they might have to the issue of general character would not make the trial court's ruling erroneous, in view of the appellant's direct testimony.

The next objection of appellant relates to the introduction into evidence of five photographs taken in the victim's apartment of the body as found by the police. Appellant contends that the photographs throw no relevant light on any material matters in the case and because of their gruesome character could only influence the jury and arouse prejudice against the appellant.

Appellant acknowledges that the rule here applicable is that stated in State v. Moore, Mo.Sup., 303 S.W.2d 60, 65[1], as follows:

"The rule as to the admissibility of this sort of visual evidence is well settled. Demonstrative evidence of this character is admissible if it tends to connect the accused with the crime, or to prove the identity of the deceased, or show the nature of the wound, or throw any relevant light upon a material matter at issue."

These photographs did shed relevant light upon material matters at issue in the case. They clearly were corroborative of the appellant's statement, offered in evidence and claimed by the appellant to have been false. They show the condition of the victim's clothing, in accord with his statement. They show the lamp cord which the appellant's statement says was wound around the victim's neck. They cannot be said to be lacking in materiality and relevancy and their character otherwise does not render them inadmissible. State v. Moore, supra; State v. Tyson, 363 Mo. 1242, 258 S.W.2d 651. The state's evidence sufficiently demonstrated that the photographs depicted the position and condition of the body as existed when the police officers first arrived at the scene. There

is some testimony that a coat had been removed before one of the pictures was taken, but that fact would not render the photograph inadmissible.

Appellant next objects to the instruction on burden of proof which stated, in part:

"If, upon consideration of all the evidence, you have a reasonable doubt of the defendant's guilt, you should acquit; but a doubt to authorize an acquittal on that ground ought to be a substantial doubt, touching the defendant's guilt, and not a mere possibility of his innocence."

Acknowledging that this language has been approved in numerous cases, appellant says that the terms "reasonable" and "substantial" do not have the same meaning and that the effect of the instruction is that "the State was not required to prove appellant's guilt beyond a reasonable doubt but * * * appellant was required to prove his innocence so as to remove substantial doubt as to his guilt."

Virtually the same objection to the language of this instruction was overruled in State v. Rhodes, Mo.Sup., 408 S.W.2d 68; State v. Deutschmann, Mo.Sup., 392 S.W.2d 279; State v. Maxwell, Mo.Sup., 376 S.W.2d 170; State v. Armstrong, Mo.Sup., 361 S.W.2d 811, to cite only a few of the more recent cases in which the question has arisen. Appellant has advanced no valid reason for our now disapproving this instruction.

The last matter raised by appellant relates to the final argument of the prosecuting attorney. The format of the closing argument was the approach to the case of a police officer who was assigned to it. Although appellant now objects to an argument from such an approach, it is clear that no objection on such basis was raised at the time of the argument. We concern ourselves on this review only with the objections raised at the time of the argument. The objections specifically raised and here urged related to statements by the prosecutor which, according to appellant, were

beyond the proper scope of the evidence presented at the trial. All of the objections related to the state's showing that, upon his original interrogation, the appellant's denial of his involvement in the offense was shaken when the falsity of his story that he had not seen Miss Sussex after she left the Flaming Pit was discovered. Without detailing the statements objected to, it is clear that the argument related to this situation, shown by the evidence, and argument based upon it was wholly proper. We do not glean, as does appellant, from the argument an innuendo that the police investigation revealed implicating evidence not produced at the trial. The argument was related to evidence presented and the trial court's rulings on the appellant's objections were not erroneous.

Matters of record examined pursuant to Supreme Court Rule 28.02, V.A.M.R., are free from error.

The judgment is affirmed.

HOUSER and HIGGINS, CC., concur.

PER CURIAM:

The foregoing opinion by WELBORN, C., is adopted as the opinion of the Court.

All of the Judges concur.