James Dale **EDWARDS**, Appellant,

v.

Harold R. **SWENSON**, Warden, Appellee.

No. 71–1347.

United States Court of Appeals,
Eighth Circuit.

Jan. 14, 1972.

Certiorari Denied April 24, 1972.
See 92 S.Ct. 1619.

Hubert I. Binowitz, St. Louis, Mo., for appellant.

Kenneth M. Romines, Asst. Atty. Gen., John C. Danforth, Atty. Gen., Jefferson City, Mo., for appellee.

* Western District of Missouri, sitting by designation.

Before MATTHES, Chief Judge, LAY, Circuit Judge, and HUNTER, District Judge.*

MATTHES, Chief Judge.

Following a three-day trial, James Dale Edwards was convicted on December 16, 1965, of first degree murder and sentenced to life imprisonment. He appealed to the Missouri Supreme Court, and the judgment of conviction was affirmed. State v. Edwards, 435 S.W.2d 1 (1968).

Edwards sought relief in the United States District Court for the Eastern District of Missouri by filing a petition for habeas corpus. It was dismissed by the district court for failure to exhaust state remedies. We declined to interfere with the action of the district court. Edwards' second petition for habeas relief met the same fate in the same federal district court.[1] However, on appeal we held that the ground relied upon by appellant for habeas relief, to wit, that his incriminating confession was involuntary, had been presented to and decided by the Missouri Supreme Court. Accordingly, we ruled Edwards had exhausted his state remedies and remanded the habeas proceeding to the federal district court for a plenary hearing on the merits of his claim. Edwards v. Swenson, 429 F.2d 1291 (8th Cir. 1970).

On remand, Judge Meredith appointed an attorney for Edwards. A full evidentiary hearing was held at which there was introduced testimonial evidence and the full record of the state trial, including a large number of exhibits. The hearing focused entirely upon the confession. In due time, Judge Meredith filed a memorandum opinion, 327 F. Supp. 303, holding that the confession had been voluntarily given, that it was not the product of physical or mental duress, or other proscribed practices and dismissed the petition for habeas corpus.

1. Both petitions were filed in the Western District of Missouri, where petitioner is incarcerated, then transferred to the Eastern District, where he had been tried.

Appellant brings the case here for review.

The sole issue presented for our determination, as framed by appellant in his brief, is "whether as a matter of law, the out of court statements of the appellant introduced against him at his trial were inadmissible as having been obtained in violation of his rights under the United States Constitution."

Preliminarily, and of importance in resolving the confession issue, is the standard or test to be applied in evaluating the evidence. The case was tried in December, 1965, prior to Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L. Ed.2d 694 (1966), which is not to be given retroactive application. Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966). We considered at length a pre-Miranda confession in Parker v. Sigler, 413 F.2d 459 (8th Cir. 1969)[2] and announced:

> "The standard to be applied in determining the vital issue before us is whether considering the totality of the circumstances the confessions made by the defendant were voluntary. Greenwald v. Wisconsin, 390 U.S. 519, 521, 88 S.Ct. 1152, 20 L.Ed.2d 77; Clewis v. Texas, 386 U.S. 707, 708, 87 S.Ct. 1338, 18 L.Ed.2d 423; Haynes v. Washington, supra, 373 U.S. [503], at 513, 83 S.Ct. 1336 [10 L.Ed.2d 513]."

413 F.2d, at 464.

Appellant recognizes and concedes that the standard just announced applies to the confession in this case. His position is that the totality of the circumstances conclusively shows that the confession was not voluntary and should not have been introduced into evidence. More specifically, appellant relies upon alleged physical mistreatment, and mental coercion as the result of a lengthy interrogation by the police officers who were investigating the murder, and the failure to furnish him with counsel during the interrogation. After a painstaking study of the state trial court record, including pertinent exhibits, and the evidence adduced at the federal habeas corpus hearing, we are convinced that the state court and Judge Meredith properly concluded that the confession was not vulnerable to the attacks made thereon by appellant but, to the contrary, had been voluntarily given.

In view of the pronounced difference between the evidence before Judge Meredith at the hearing in his court on September 30, 1970, and the evidence on the motion to suppress and at the trial on December 15 and 16, 1965, a further explication of the pertinent facts is in order.

As reference to the opinion of the Missouri Supreme Court will disclose, appellant was first questioned during the night of February 23, 1965. As a result of that interrogation, no charge was lodged against him and he was permitted to return to his home. At approximately 11:00 p.m. on March 3, 1965, he was arrested at the home of his mother, where he was then living, and taken to the police station shortly thereafter. After further interrogation, he confessed to killing the victim and, at about 4:00 a.m., signed a typewritten statement of his confession. See 435 S. W.2d, at 3, 4–5. Following the giving of the confession, appellant was formally charged on the morning of March 4 with the crime. Within a relatively short time thereafter, appellant's mother employed James J. Rankin, who was reputed to be an experienced and competent criminal lawyer.[3]

Mr. Rankin filed a motion to suppress the confession on the ground that it had not been voluntarily given. During the trial of the case, the court held a hearing outside the presence of the jury on the motion. At that hearing, the only witnesses who testified were Major Va-

---

2. Reversed for a Jackson v. Denno hearing, 396 U.S. 482, 90 S.Ct. 667, 24 L. Ed.2d 672 (1970).

3. Mr. Rankin died on May 25, 1967.

sel and Sergeant Crews of the St. Louis County Police Department. These officers had participated in the investigation of the murder and were present during all or most of the interrogation which led to the confession on the morning of March 4. Both officers testified positively and unequivocally that no promises or threats were made before appellant confessed, and that appellant was not subjected to physical abuse or mental coercion. Appellant, although present at the hearing, did not testify on the motion to suppress. Neither did any person testify in his behalf. At the conclusion of the hearing the trial court denied the motion to suppress.[4] The trial was then resumed before the jury and, as a part of the state's case, the court reporter who had typed the confession and another police officer who was present testified that they did not observe anything unusual or abnormal about the physical condition or appearance of appellant.

It was not until appellant testified in his own behalf (there were no other witnesses for appellant) that the claimed physical abuse by Officer Crews surfaced. According to appellant's trial testimony, Crews struck him several times and on one occasion knocked him off the chair upon which he was seated; that out of fear for his safety appellant decided to and did confess. He did not, however, testify that he ever requested the services of an attorney or that he be afforded the opportunity to contact his lawyer who was representing him in another matter. Appellant also testified that at approximately 9:30 a.m. on the same day, March 4, he accompanied the police officers to the victim's apartment where, in the presence of newsmen and photographers, he reenacted the brutal slaying.

The issue of voluntariness of appellant's confession was submitted to the jury by an appropriate instruction. Obviously by its verdict, the jury, too, found the confession had been given voluntarily.

This brings us to consideration of the evidence adduced by appellant in the United States District Court. At that hearing, appellant presented for the first time witnesses whose testimony was designed to substantiate his claim of police brutality. His mother and sister testified that at approximately 8:00 a.m. on the morning of the confession, March 4, they visited appellant. They stated they observed that appellant's face was bruised, discolored, and swollen, and that he acted irrationally. The father[5] testified that when he visited his son on the morning of March 5, he too saw the bruises on appellant's face, and also on his back. Additionally, appellant testified for the first time that before confessing he had asked for and was denied permission to telephone his attorney. To offset the foregoing, officers Vasel and Crews again denied striking appellant or otherwise mistreating him mentally or physically. One of the officers also disputed the claim that appellant had requested an opportunity to contact his attorney.

As we analyze the record in its entirety, there are facts established by uncontradicted evidence which cause appellant's claims to have a hollow ring.

First, as to the allegations of physical abuse, both appellant's parents testified at the federal habeas hearing that they had informed appellant's retained trial

---

4. Although the state trial judge overruled the motion to suppress, he did not make an express finding that the confession was voluntary, as required by Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). In this situation, the Missouri Supreme Court, after submission of the case, entered an order directing the trial court to make an express finding on the issue of the voluntariness of appellant's statements. The trial court complied and made a finding that the statements were voluntary. 435 S.W.2d, at 5.

5. Appellant's parents were divorced at that time.

counsel, Mr. Rankin, of appellant's physical condition as observed by the mother four hours after the confession was signed and by the father on the following day; but neither parent could explain why they were not called as witnesses on the motion to suppress or at trial. We are constrained to observe that if appellant had been subjected to physical assaults which were manifested by a bruised, swollen and discolored face, and if this information had been conveyed to Mr. Rankin by persons claiming to have seen his condition, it is almost inconceivable that Mr. Rankin would not have submitted this evidence, first to the judge on the motion to suppress and secondly to the jury. Unfortunately, when the matter was heard in Judge Meredith's court, Mr. Rankin's lips were sealed by death.

If any doubt remained as to the probity of the evidence of physical maltreatment presented at the habeas hearing, in our judgment it would be completely resolved by the close-up photographs taken of appellant on the morning of March 4 (within hours after appellant's mother and sister allegedly noted his discolored and swollen face) by the skilled photographers of the news media when appellant was voluntarily presented to the press in the victim's apartment to reenact the crime. Our careful examination of these trial exhibits reveals that none of the five pictures depicting appellant from different angles discloses the slightest evidence of any bruises, lacerations, or discoloration of his face. The photographs confirm the repeated testimony of several state witnesses that appellant's physical appearance was normal. Furthermore, we have difficulty believing that police officers would present appellant to the press if he in fact bore signs of physical mistreatment.

Insofar as appellant claimed that his request to contact his attorney was denied, we think it important to note that this allegation also makes its initial appearance at the habeas hearing. It is also significant that between appellant's release on February 24 and his rearrest on March 3 he made no effort to contact the attorney then representing him on other matters, although he knew from that initial interrogation that he was a principal suspect. And it is not without significance that after appellant was arrested at his mother's home at about 11:00 p.m., his mother, who had full knowledge of the arrest, the specific charge, and the previous arrest and interrogation, made no attempt until the following day to procure for appellant the assistance of appellant's or any other attorney.

■ In the final analysis, as we view the matter, the confession issue in this case presented a question of fact, the resolution of which turned in large measure upon the credibility of witnesses who testified pro and con as to what transpired prior to the confession. An objective appraisal of all the circumstances reviewed above leads us to the inescapable conclusion that the district court was fully warranted in discrediting the evidence offered by appellant at the habeas hearing. We therefore affirm the district court's finding that the confession was voluntarily given and not extracted in contravention of either the Fifth or Sixth Amendments.

As a subsidiary attack against the confession, appellant asserts that his arrest was illegal, and consequently it must follow that the confession was inadmissible under the "fruit of the poisonous tree doctrine."

■ Contrary to appellant's position here, the validity of the arrest on March 3, 1965, was not raised on appeal from the judgment of conviction.[6] Adherence to the exhaustion of state remedies principle would therefore justify us in declining to consider the arrest issue. We nonetheless are constrained to consider the merits of the question, inasmuch as

6. The Missouri Supreme Court did notice that appellant claimed his original detention during the night of February 23 was, in part, unlawful. 435 S.W.2d, at 35.

the record justifies the conclusion that all available and relevant evidence pertaining to the arrest has been fully explored. To review all the facts possessed by the officers when the arrest was made on March 3 would serve only unduly to prolong this opinion. We are satisfied that the officers acted legally and that appellant's arrest is not subject to any infirmities.

 Even if we were to assume the arrest was illegal, that would not vitiate appellant's confession because the evidence fails to establish any nexus between the arrest and the confession. It is axiomatic that an illegal arrest alone does not render a conviction ineffective unless the trial was thereby rendered unfair, such as by the use of evidence which was the fruit of the illegal arrest and therefore similarly tainted. Collins v. Swenson, 443 F.2d 329, 331 (8th Cir. 1971); Brooks v. Smith, 429 F.2d 1281, 1282 (5th Cir. 1970); Abraham v. Wainwright, 407 F.2d 826 (5th Cir., 1969); Sewell v. United States, 406 F. 2d 1289, 1292–1293 (8th Cir. 1969). *Cf.* Governor of Virgin Islands v. Bolones, 427 F.2d 1135 (3d Cir. 1970). As a corollary to this principle, a confession is not excludable as being subsequent to an illegal arrest unless it is the fruit of that arrest, either because the arresting officers seized matters which aided in procuring the confession, see United States v. Evans, 454 F.2d 813 (8th Cir., 1971), or because the arrest otherwise caused the confession. Wong Sun v. United States, 371 U.S. 471, 484–488, 491, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). We do not think the arrest and confession here had a sufficient causal relation to taint the confession even if the arrest were without probable cause, and thus find nothing flowing from the arrest which prevented appellant from receiving a fair trial.

In summary, appellant's trial was not tainted by the denial or infringement of his constitutional rights. Therefore, we affirm.