DARREL F. PARKER, APPELLANT, V. STATE OF NEBRASKA, APPELLEE.

131 N. W. 2d 678

Filed December 11, 1964.  No. 35673.

(1)

Warren C. Schrempp and Richard J. Bruckner, for appellant.

Clarence A. H. Meyer, Attorney General, and Homer G. Hamilton, for appellee.

Heard before WHITE, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

BOSLAUGH, J.

The plaintiff, Darrel F. Parker, was convicted of first degree murder in the district court for Lancaster County, Nebraska, and sentenced to life imprisonment. The judgment was affirmed by this court in Parker v. State, 164 Neb. 614, 83 N. W. 2d 347.

The plaintiff brought this proceeding to obtain a writ of error coram nobis and an order granting a new trial. After a hearing upon the merits, the trial court denied the writ and dismissed the action. The plaintiff's motion for new trial was overruled and he has appealed.

The common law writ of error coram nobis exists in this state under section 49-101, R. R. S. 1943. Carlsen v. State, 129 Neb. 84, 261 N. W. 339. The purpose of the writ of error coram nobis is to bring before the court rendering the judgment matters of fact which, if known at the time the judgment was rendered, would have prevented its rendition. It enables the court to recall some adjudication, made while some fact existed which, if before the court, would have prevented rendition of the judgment and which, through no fault of the party, was not presented. Swanson v. State, 148 Neb. 155, 26 N. W. 2d 595.

The burden of proof in a proceeding to obtain a writ of error coram nobis is upon the plaintiff. Hawk v.

State, 151 Neb. 717, 39 N. W. 2d 561. The alleged error of fact must be such as would have prevented a conviction. It is not enough to show that it might have caused a different result. See, 24 C. J. S., Criminal Law, § 1606 (7), p. 691; Hysler v. Florida, 315 U. S. 411, 62 S. Ct. 688, 86 L. Ed 932.

The plaintiff was charged with and convicted of the murder of his wife, Nancy Parker, on December 14, 1955. The principal allegations contained in the petition filed in this proceeding and most of the evidence introduced or offered by the plaintiff relate to the plaintiff's contention that Nancy Parker was killed by someone other than the plaintiff. The following is a summary of the principal evidence offered by the plaintiff in support of this contention.

The plaintiff offered the testimony of one of his attorneys that in 1956, Wesley Peery, then a prisoner in the Nebraska State Penitentiary, said that if the attorney or plaintiff's parents would guarantee Peery's bond, Peery would tell where Nancy Parker's wristwatch and a suitcase taken from the Parker home on the day of the murder were; that the plaintiff did not kill Nancy Parker; that Peery drove by the Parker home on the morning of the murder; and that when asked if he had stopped in the Parker home that morning Peery answered, "Maybe I did. I don't know for sure."

The plaintiff offered his own testimony that in June 1956, Peery told the plaintiff that if his parents would guarantee Peery's bond, Peery would tell the plaintiff where Nancy Parker's wristwatch and the suitcase were, and the name of the person who killed Nancy Parker.

The plaintiff offered the testimony of Kenneth Hamilton, a former prisoner in the Nebraska State Penitentiary, that in 1956 and 1957, Peery told Hamilton on several occasions that he killed Nancy Parker and described in detail how the crime was committed.

The plaintiff offered the testimony of Charles Sedlacek, a former prisoner in the Nebraska State Penitentiary,

that in 1956 and 1957, on a number of occasions Peery discussed the Nancy Parker murder case with him; that Peery stated that he became acquainted with Nancy Parker, had been in her house, and had lunch with her; that Peery said that on December 14, 1955, he parked his black 1949 Ford near the Parker home, waited for the plaintiff to leave, and then entered the Parker home and killed Nancy Parker; and that Peery said that he took her wristwatch, a suitcase, some sofa pillows, and other property with him when he left the house.

Sedlacek testified that he was released from the penitentiary in June 1957; that in August 1957, he helped furnish a bond for the release of Peery from the penitentiary; that several days after Peery had been released from the penitentiary, he and Ray Dillard came to Sedlacek's house in Crete, Nebraska; and that Peery left a wristwatch, two suitcases containing men's shirts and other clothing, three sofa pillows, and some other items at Sedlacek's place. The plaintiff offered the testimony of Sedlacek that Peery offered to sell the "outfit" for $50 and that Peery said that it came out of the Parker house. Sedlacek identified exhibit 28 as the suitcase and exhibits 30, 30-A, and 30-B as the sofa pillows brought to his house by Peery.

The plaintiff offered in evidence a document identified as exhibit 23, which purports to be a typewritten letter signed by Peery dated August 8, 1957. Exhibit 23, with profanity deleted, is as follows:

"August 8, 1957.

"Dear Charlie .

"I have seen and heard what a hard time the Lincoln cops have given to you since you have left here, and ido not have no use for the chief of Lincoln police nor for any one under him, and the same goes for the sheriffs andall of his depities ,and the same goes for Elmer Schiell and Dale Farbrock; . And if you can help me get out on abail bond,I will help you any way posible , you just name who

you wish bumped off , as I have the guts to do the job 100%; just like took care of old * * * Nancy Parker,I can assure you I doneit ok;

"And if Ineed any help, I can whistle , and my Buddy Ronald W. Brewer will be johnny on the job;

"I sure made amonkey out of them when they gave to me the so called lie detector test, all a person has to do is to know how to react and one has it made,Ha ha heho , Savvy? you do your part of the bargion,and I will do just what I have said I will do .

"Hope to see you real soon, so Please don't let me Down.

"Please do destroy this letter,as I am having it sent out by a Good Pal of mine,.

"Best of good luck to you Old Buddie Charlie , Hope to see you in the very near futher . Don't let me down PLEASE.

"I remain your old faithfull Buddy .

Wesley H. PEERY.<br>/s/ Wesley Peery"

The evidence does not show how or when the plaintiff came into possession of exhibit 23. The record indicates that much of the evidence offered by the plaintiff in this proceeding was obtained by Ralph Peterson, a private investigator from Red Oak, Iowa. Peterson did not testify in the proceeding.

Ed W. Johnson, a retired furnace salesman from Red Oak, Iowa, and an uncle of Peterson, testified that he was with Peterson on March 30, 1961, when he saw exhibit 23 on a dining room table at the Sedlacek home in Crete, Nebraska.

The addressee of exhibit 23, "Dear Charlie," is not otherwise identified in the record in this case. The witness Sedlacek was not examined by either party concerning exhibit 23. Peery testified by deposition that he had never seen exhibit 23 before; that he did not type it; and that he did not sign it. Peery also testified

that Peterson offered Peery $25,000 if he would sign a confession to the murder of Nancy Parker.

As a foundation for the admission of exhibit 23 into evidence, the plaintiff produced the testimony of Winsor C. Moore, an examiner of questioned documents. Moore testified that he had examined exhibit 23 and had compared it with five other exhibits written by Peery and that it was his opinion that the same person had written exhibit 23. The opinion was based upon certain "traits" which Moore observed which consisted of the use, or misuse, of punctuation marks in the documents examined. Moore had no opinion concerning the signature which appears on exhibit 23 and explained that he found characteristics of both forgery and genuineness in the signature. The trial court sustained an objection to the offer of exhibit 23 on the ground that it was hearsay and that there was insufficient foundation.

As a part of its case, the defendant produced the testimony of Frederick E. Webb, a special agent for the Federal Bureau of Investigation. Webb testified that he was assigned to the documents section of the FBI laboratory and had been doing this work for 21 years. Webb testified that he had examined exhibit 23, had compared it with known signatures of Peery, and that it was his opinion that the signature on exhibit 23 was an obvious, simulated forgery. Webb further testified that it is not possible to accurately identify a typewritten document with an individual and that the use of punctuation marks is not considered to be an individual characteristic. The foundation for admission of exhibit 23 was not sufficient, and the objection to its offer in evidence was properly sustained.

Peery testified, by deposition, that he is now serving a sentence of from 30 to 75 years in the Ohio State Penitentiary; that he was given seven or eight lie detector tests in Lincoln, Nebraska, in connection with the Parker case and released after the tests; that he told one of the plaintiff's attorneys that he knew an individual

who had Nancy's wristwatch and suitcase because he was trying to get out on bond, but that these statements were false; that he told the plaintiff that if the Parkers would help Peery get out on bond, he would tell them where some of the property was that had been stolen from the Parker home; and that these statements were false and were made because Peery was trying to get help to get out of the penitentiary.

Peery further testified, in his deposition, that he had never talked with Sedlacek about the Parker case; that he had never been to Sedlacek's home in Crete, Nebraska; that he did not know Nancy Parker and had never seen her; that he had never parked his car in the area of the Parker home; that he did not kill Nancy Parker; that he did not know who did kill Nancy Parker; and that he had no personal knowledge about the Nancy Parker murder.

All presumptions exist in favor of the regularity and correctness of the judgments of courts of general jurisdiction. Mitchell v. State, 159 Neb. 638, 68 N. W. 2d 184. The burden is on the plaintiff in a proceeding for a writ of error coram nobis to produce substantial and credible evidence sufficient to overcome the presumption that the judgment of conviction was correct. People v. Boehm, 285 App. Div. 245, 137 N. Y. S. 2d 400, affirmed 309 N. Y. 362, 130 N. E. 2d 897.

With the purported written confession of Peery eliminated, the plaintiff's evidence consists largely of testimony concerning alleged oral declarations of Peery. Under oath, Peery either denies that the declarations were made or testifies that the declarations were false when made. Peery, Hamilton, and Sedlacek are all convicted felons. Sedlacek has a history of mental illness and a criminal record which dates back to 1931.

Without further discussion or analysis, we think that it is apparent that the evidence in this case is, for the most part, not substantial or credible. It does not establish that Nancy Parker was killed by someone other than

the plaintiff and that the judgment in Parker v. State, *supra*, is based upon errors of fact. The evidence is not sufficient to entitle the plaintiff to relief in this proceeding.

In reaching this conclusion we have considered the evidence which was offered by the plaintiff but excluded by the trial court as well as the evidence which was admitted. Therefore, it is unnecessary that we consider the plaintiff's assignments of error relating to the exclusion of evidence offered by him.

On April 13, 1956, at the original trial upon the information, Dr. Victor E. Levine, a biological chemist, testified for the State that he had examined the contents of a glass jar which contained a portion of the contents of the stomach of Nancy Parker; and that it was his opinion that death had occurred within 15 to 25 minutes after the food had been eaten. The plaintiff offered evidence to the effect that in 1957, Dr. Levine had stated publicly that it is necessary to examine the entire contents of a stomach in order to ascertain the time of death.

The evidence which the plaintiff offered, if true, would have tended to rebut or impeach the testimony of Dr. Levine, and would have been proper evidence to develop on cross-examination. The evidence offered is not a basis for relief in this proceeding. Ordinarily, the writ of error coram nobis does not lie to test the credibility of witnesses in a criminal trial and cannot be invoked upon the ground that an important witness testified falsely about a material issue in the case. Hawk v. State, *supra.*

The remaining contentions of the plaintiff relate to the original trial upon the information. The plaintiff alleges that his confession was illegally obtained and should not have been received in evidence, and that the prosecuting attorney was guilty of misconduct in his closing argument which prevented the plaintiff from receiving a fair trial. These allegations relate to facts

which were known to the plaintiff at the time of the original trial. Such facts do not constitute grounds for relief in a proceeding for a writ of error coram nobis. A petition for a writ of error coram nobis is insufficient if it states only facts which were known to the petitioner before the judgment attacked was rendered. State v. Boyd, 117 Neb. 320, 220 N. W. 281, 58 A. L. R. 1283.

In reality, these allegations raise questions of law and the plaintiff is attempting to relitigate questions which were determined in the original trial. The writ of error coram nobis is not a substitute for a writ of error brought to correct errors of law apparent on the record. Hawk v. State, *supra*. It does not permit a defendant to retry his case again and again. Carlsen v. State, *supra*. The allegations relating to the original trial do not require further consideration at this time and in this proceeding.

The judgment of the district court is affirmed.

AFFIRMED.