**Darrel F. PARKER, Appellant,**

v.

**Maurice H. SIGLER, Warden, Nebraska State Penitentiary, Appellee.**

**No. 19411.**

United States Court of Appeals
Eighth Circuit.

July 18, 1969.

Rehearing Denied Aug. 11, 1969.

Richard J. Bruckner, Omaha, Neb., for appellant, Warren C. Schrempp, Omaha, Neb., on the brief.

Ralph H. Gillan, Asst. Atty. Gen. of Nebraska, Lincoln, Neb., for appellee, Clarence A. H. Meyer, Atty. Gen., of Nebraska, Lincoln, Neb., on the brief.

Before VAN OOSTERHOUT, Chief Judge, and MATTHES and HEANEY, Circuit Judges.

VAN OOSTERHOUT, Chief Judge.

This is a timely appeal by Darrel F. Parker, hereinafter usually referred to as defendant, from the order of the federal district court (Judge Van Pelt)

filed June 27, 1968, dismissing his petition for writ of habeas corpus. Certificate of probable cause and permission to proceed with the appeal in forma pauperis was granted by the trial court.

Defendant's principal contention raised in the trial court and on appeal is that his confessions received in evidence at his trial were involuntary and that federally guaranteed constitutional rights of the defendant were violated by the reception in evidence of such confessions.[1]

A brief statement of the background of this litigation is desirable. Defendant Parker was tried by a jury in the district court of Lancaster County, Nebraska, on a charge of first degree murder of his wife, Nancy Parker. He was found guilty as charged by the jury with a recommendation of life imprisonment. His motion for a new trial was overruled and he was sentenced to life imprisonment on June 2, 1956. Upon direct appeal to the Nebraska Supreme Court, the conviction was affirmed. Parker v. State, 164 Neb. 614, 83 N.W. 2d 347. Certiorari was denied. 356 U. S. 933, 78 S.Ct. 775, 2 L.Ed.2d 763. Subsequently in 1962 defendant filed a petition for writ of error *coram nobis* in the sentencing court which was dismissed. The dismissal was affirmed upon appeal. Parker v. State, 178 Neb. 1, 131 N.W.2d 678.

Defendant filed a motion for post conviction relief pursuant to Nebraska law with the sentencing court in 1965 wherein he raised the issue that the confession obtained from him was obtained in violation of his federal constitutional rights and was improperly received in evidence at his trial. After affording an evidentiary hearing, the trial court denied relief. The Supreme Court affirmed in State v. Parker, 180 Neb. 707, 144 N.W.2d 525. Some of the factual background of the present litigation is set out in the Nebraska Supreme Court cases which we have cited.

The petition now before us was filed in the Nebraska federal district court on October 26, 1966. It is clearly established that such court had jurisdiction to entertain the petition and that the defendant has exhausted available state remedies.

In both the state and federal post conviction proceedings, a full opportunity was afforded the State and the defendant to offer any relevant evidence. As stated by Judge Van Pelt, the evidence offered in the federal proceeding was substantially the same as that presented in the state proceeding. The evidence before the federal court consisted largely of a transcript of the evidence offered at defendant's trial, including that offered in the absence of the jury on foundation for the admission of the confession and the more voluminous testimony offered after defendant's objection to the reception of the confession had been overruled. The record of the prior state proceedings, the content of the alleged confessions and certain stipulated facts were before the court. All parties declined the opportunity afforded them to offer any additional testimony they deemed relevant.

Judge Van Pelt denied defendant's petition on June 27, 1968. A comprehensive memorandum opinion (not reported) was filed stating the basis for the

1. Other issues raised in the trial court and here include: (1) Exclusion of testimony of defendant's expert witness on lie detector tests which he made when evidence showed State expert had given defendant such tests and told defendant that the tests showed he was lying. (2) Misconduct at the trial of the court reporter who had taken the confession. (3) Admissions of evidence of Opal Closner on Mrs. Parker's reluctance to go home, which Nebraska Supreme Court held should not have been admitted but that no prejudice resulted. (4) Misconduct of prosecuting attorney in telling jury defendant had masturbated on date of his wife's funeral when there was no evidence to support such statement. (5) Denial of due process in defendant's coram nobis and post conviction hearing. By reason of the result which we reach on the issue of voluntariness of the confessions, we deem it unnecessary to discuss the issues just listed.

action taken. On the voluntariness issue, Judge Van Pelt states: "The evidence is definitely conflicting. There is evidence in the record which, if believed, would support petitioner's claim of involuntariness. However, there is also ample evidence in the record to support the findings of fact made by the state court in the post conviction action." Judge Van Pelt sets out the statement from Townsend v. Sain, 372 U.S. 293, 318, 83 S.Ct. 745, 760, 9 L.Ed.2d 770, reading:

> "If he concludes that the habeas applicant was afforded a full and fair hearing by the state court resulting in reliable findings, he may, and ordinarily should, accept the facts as found in the hearing. But he need not.
> * * *"

and applies such teaching, saying:

> "This court thus accepts and adopts the state trial court's findings of facts. It believes that it was the intent of the Congress, if a full, fair and impartial hearing was had in the State court that the Federal court, in maintaining the sometimes delicate balance between the State and Federal systems should not disturb the State court's findings absent convincing testimony that the factual determination was erroneous."

Has there been a reliable finding of fact in the prior state court proceedings upon the voluntariness issue upon which Judge Van Pelt could properly rely? We think not. The disposition of the state post conviction proceeding appears from the Supreme Court opinion to be based upon a conclusive effect given to the convicting court's admission of the confession and the affirmance of the conviction on direct appeal. The post conviction court's determination appears to be based upon the following holdings:

> "This conflicting evidence was submitted to the trial court which held the confession voluntary. The jury found it voluntary. It has now been considered by two trial judges, each of

whom reviewed it again on motions for new trial. It was previously reviewed by this court on appeal.
> * * * * * *
> "We find no evidence of a real miscarriage of justice. We think the same issues should not now be relitigated." 144 N.W.2d 525, 528–529.

Thus the validity of the voluntariness determination in all subsequent proceedings clearly appears to rest upon the validity of the determination of the voluntariness issue by the sentencing court.

The controlling case setting the standards to be applied in determining the voluntariness of a confession is Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908. The Court there stated:

> "It is now axiomatic that a defendant in a criminal case is deprived of due process of law if his conviction is founded, in whole or in part, upon an involuntary confession, without regard for the truth or falsity of the confession, Rogers v. Richmond, 365 U.S. 534, 81 S.Ct. 735, 5 L.Ed.2d 760, and even though there is ample evidence aside from the confession to support the conviction. Malinski v. New York, 324 U.S. 401, 65 S.Ct. 781, 89 L.Ed. 1029; Stroble v. California, 343 U.S. 181, 72 S.Ct. 599, 96 L.Ed. 872; Payne v. Arkansas, 356 U.S. 560, 78 S.Ct. 844, 2 L.Ed.2d 975. Equally clear is the defendant's constitutional right at some stage in the proceedings to object to the use of the confession and to have a fair hearing and a reliable determination on the issue of voluntariness, a determination uninfluenced by the truth or falsity of the confession." 378 U.S. 368, 376–377, 84 S.Ct. 1774, 1780–1781.

Under the New York procedure under attack in that case, the trial court in passing on the voluntariness issue could not resolve disputed fact issues but was required to submit disputed fact issues bearing on voluntariness to the jury for determination under proper instructions. The Supreme Court points out that it is impossible to determine from the jury verdict whether the jury found the con-

fession voluntary and relied upon it or involuntary and ignored it. The New York practice of permitting the jury to determine voluntariness on the basis of disputed facts was found to be violative of due process. The Supreme Court held that the trial court, not the jury, must make the determination of a confession's voluntariness before it can be received in evidence, stating:

"These procedures must, therefore, be fully adequate to insure a reliable and clear-cut determination of the voluntariness of the confession, including the resolution of disputed facts upon which the voluntariness issue may depend. In our view, the New York procedure falls short of satisfying these constitutional requirements." 378 U.S. 368, 391, 84 S.Ct. 1774, 1788.

The holding in Jackson v. Denno that the trial court must resolve evidentiary conflicts before admitting the confession is reaffirmed in Sims v. Georgia, 385 U.S. 538, 87 S.Ct. 639, 17 L.Ed.2d 593. In that case, the Court holds: "Although the judge need not make formal findings of fact or write an opinion, his conclusion that the confession is voluntary must appear from the record with unmistakable clarity." 385 U.S. 538, 544, 87 S.Ct. 639, 643.[2]

■ Defendant's conviction became final prior to the Supreme Court's decision in Jackson v. Denno. It is established that the holding of Jackson v. Denno is to be retroactively applied. Desist v. United States, 394 U.S. 244, 250, n. 15, 89 S.Ct. 1048, 22 L.Ed.2d 248.

The record in the case before us shows that the convicting court made no reliable determination of the voluntariness issue before admitting the confession in evidence. All that appears in the record is a bald statement overruling

defendant's appropriate objection to the admission of the written signed confession. No finding or basis for such ruling is stated. Additionally, the court in its instructions submitted to the jury the issue of voluntariness of the confession as well as that of the alleged oral confessions hereinafter discussed. The Supreme Court of Nebraska in affirming the conviction thus states the standards it follows in passing upon the voluntariness of a confession:

" 'In laying a foundation in a criminal case for the admission of a confession in evidence, it is sufficient to establish affirmatively all that occurred immediately prior to and at the time of the making of the confession, provided such affirmative proof shows it to have been freely and voluntarily made and excludes the hypothesis of improper inducements or threats.' "

\* \* \* \* \* \*

It is true that foundational or negative evidence adduced on behalf of the defendant was in conflict with the affirmative evidence, but for the purpose of determining foundation for admissibility under the rule in this jurisdiction only the affirmative evidence requires consideration." 83 N. W.2d 347, 352.

The Court additionally states that in accordance with Nebraska law the conflicting evidence on the voluntariness issue was properly submitted to the jury and that the jury by its verdict made the necessary finding thereon. The Nebraska Court indicates that the evidence on voluntariness is too voluminous to state or summarize. We agree that it is impossible to fairly summarize the extensive evidence on the pertinent issue within the proper limits of an opinion.

It is plain and clear that the standards set out by the Nebraska Supreme

2. A controversy not resolved by the Supreme Court exists on whether the "beyond a reasonable doubt" standard applies to a trial court's determination of the voluntariness issue. Compare opinion of Judge (now Chief Justice) Burger with that of Judge Leventhal in Clifton v. United States, 125 U.S.App.D.C. 257, 371

F.2d 354. See also Pea v. United States, 130 U.S.App.D.C. 66, 397 F.2d 627 and cases there cited. We need not enter such controversy to decide this case and do not do so. Rather we adhere to the unmistakable clarity standard of Sims followed by us in Evans v. United States, 8 Cir., 375 F.2d 355, 360.

Court fall far short of meeting the Jackson v. Denno standards. It is only fair to state that Jackson v. Denno had not been decided at the time the Nebraska Supreme Court affirmed the conviction. Neither the trial court nor the Supreme Court made any finding on the voluntariness issue that meets the unmistakable clarity requirement set by the Supreme Court. Instead it appears that the trial court under Nebraska standards was going no further than to determine that the State had made a prima facie case on the basis of the affirmative evidence offered by the State.[3] The court's further holding that the jury weighed the evidence and properly resolved the issue in favor of the State is equally unacceptable under the teachings of Jackson v. Denno.

In addition to the written confession, testimony of officers Masters and Carroll was received in evidence covering statements made by defendant to them while they were with the defendant during the interval between the taking and the signing of the original confession. Hence such conversations occurred sometime after 11 p.m. Under the record, such oral confessions were so closely related in point of time to the written confession that no independent basis exists for a voluntariness finding and the validity of such confessions must rise or fall with the determination of the same issue with respect to the written confession. Apart from this, the Nebraska court correctly observed that no hearing in the absence of the jury was held on the foundation for the admission of the oral confessions.

As hereinabove pointed out, all courts considering the pertinent issue before us have based their decisions principally upon the invalid premise that the convicting court made the foundation finding required by Jackson v. Denno.

In Jackson v. Denno, the judgment denying the petition for writ of habeas corpus was rejected and the case was remanded with direction to allow the State a reasonable time to afford Jackson a hearing which would afford him a reliable determination by the trial court on the voluntariness issue or a new trial, failing which Jackson is entitled to a release. Such would be the appropriate relief to grant here unless it can be said on the record as a matter of law that no basis exists to find the confession voluntary. In *Jackson,* n. 20, Jackson's contention that his confession was involuntary as a matter of law under the undisputed evidence was rejected. A much stronger case on the basis of undisputed evidence here exists.

■ Moreover, Parker has been serving the sentence imposed upon him for some thirteen years. The interest of justice would not be served by remanding this case for a hearing upon the voluntariness of the confession if the factual background in the present case is such that in event the state court again found the confession voluntary, a determination that such finding was not warranted would be required. In both the state and federal post conviction hearings reliance was placed upon the extensive record made on voluntariness at the trial, and no additional evidence was introduced. Thus it would seem unlikely that either party has any additional substantial evidence on the voluntariness issue. Hence, we shall proceed to determine whether any record basis exists in the present case for a determination that the confession was voluntary.

The type of coercion here charged is mental coercion. In Miranda v. Arizona, 384 U.S. 436, 448, 86 S.Ct. 1602, 1614, 16 L.Ed.2d 694, the Court states:

"Again we stress that the modern practice of in-custody interrogation is psychologically rather than physically oriented. As we have stated before, 'Since Chambers v. State of Florida, 309 U.S. 227, 60 S.Ct. 472, 84 L.Ed.

---

3. We do not have here a situation where the court made an adequate finding with unmistakable clarity based upon all the evidence including the conflicting evidence and then submitted to the jury the voluntariness issue.

716, this Court has recognized that coercion can be mental as well as physical, and that the blood of the accused is not the only hallmark of an unconstitutional inquisition.' Blackburn v. Alabama, 361 U.S. 199, 206, 80 S.Ct. 274, 4 L.Ed.2d 242 (1960)."

In Haynes v. Washington, 373 U.S. 503, 515–516, 83 S.Ct. 1336, 1344, 10 L. Ed.2d 513, the Supreme Court in setting aside a state conviction on the ground that the confession was illegally obtained holds:

"Our conclusion is in no way foreclosed, as the State contends, by the fact that the state trial judge or the jury may have reached a different result on this issue.

"It is well settled that the duty of constitutional adjudication resting upon this Court requires that the question whether the Due Process Clause of the Fourteenth Amendment has been violated by admission into evidence of a coerced confession be the subject of an *independent* determination here, see, e. g., Ashcraft v. Tennessee, 322 U.S. 143, 147–148, 64 S.Ct. 921, 923, 88 L.Ed. 1192; 'we cannot escape the responsibility of making our own examination of the record,' Spano v. New York, 360 U.S. 315, 316, 79 S. Ct. 1202, 1203, 3 L.Ed.2d 1265. While, for purposes of review in this Court, the determination of the trial judge or of the jury will ordinarily be taken to resolve evidentiary conflicts and may be entitled to some weight even with respect to the ultimate conclusion on the crucial issue of voluntariness, we cannot avoid our responsibilities by permitting ourselves to be 'completely bound by state court determination of any issue essential to decision of a claim of federal right, else federal law could be frustrated by distorted fact finding.' "

■ The standard to be applied in determining the vital issue before us is whether considering the totality of the circumstances the confessions made by the defendant were voluntary. Greenwald v. Wisconsin, 390 U.S. 519, 521, 88 S.Ct. 1152, 20 L.Ed.2d 77; Clewis v. Texas, 386 U.S. 707, 708, 87 S.Ct. 1338, 18 L.Ed.2d 423; Haynes v. Washington, supra, 373 U.S. p. 513, 83 S.Ct. 1336.

■ In our present case, as is true in each of the cases last cited, the trial occurred prior to *Miranda* and hence the detailed ritual requirements made by *Miranda* are not to be retroactively applied. Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882.

In *Johnson,* the Court makes clear that the case law on coerced confessions is available to persons convicted prior to the filing of the *Miranda* decision and the fact that defendant has not been advised of his right to remain silent or his right respecting counsel at the outset of the interrogation is a significant factor in considering the voluntariness of the statement made. To like effect, see Davis v. North Carolina, 384 U.S. 737, 740, 86 S.Ct. 1761, 16 L.Ed.2d 895.

The circumstances relied upon in *Greenwald* for determining the confession made after about twelve hours of intermittent police interrogation was involuntary were lack of counsel, lack of food, sleep and medicine and lack of or inadequacy of warning as to constitutional rights. In *Clewis,* the circumstances relied upon consisted of failure to advise defendant of constitutional rights, the taking of the first statement when the taking of the defendant into custody was not supported by probable cause, and substantial concern as to the extent petitioner's faculties were impaired by coercive treatment. In *Haynes,* the confession came some seventeen hours after the arrest. No explanation of constitutional rights was given the defendant and the defendant was denied the right to call his wife. The in-custody interrogation was intermittent. The Court in the course of its opinion states: "[T]he basic techniques present here—the secret and incommunicado detention and interrogation—are devices adapted and used to extort confessions from suspects." 373 U.S. 503, 514, 83 S.Ct. 1336, 1343.

■ The totality of the circumstances in the present case supporting a deter-

mination as a matter of law that the confessions were involuntary are stronger here in our view than in the cases just cited and discussed. The circumstances in the present case which compel a determination that the confessions were involuntary include the following:

1. The following stipulation was made by the parties:

"Counsel for both parties will stipulate and agree that at the time of petitioner's detention and arrest, he was never advised of his right to an attorney; was never advised of his right against self-incrimination; was never asked if he wanted an attorney or informed that an attorney would be provided for him if so desired; and that from his original detention and until he was formerly (sic) charged with the crime of first degree murder, he was never permitted to use a telephone."

As pointed out in cases heretofore cited, the failure to give defendant any warning with respect to his constitutional rights is a significant factor in determining the voluntariness of the confession.

2. The situation set out in No. 1 is aggravated by the prosecuting attorney's request that the defendant come to the highway patrol headquarters and aid him in the investigation without indicating that he was a prime suspect and by the further request that he not tell his friend Ager, who had been with him at prior questioning and upon whom he had leaned for support, of the meeting because he did not want the press to learn of it. The manner in which the request for the defendant's appearance was made would have a distinct tendency to put the defendant off guard and minimize the possibility that he would consult with a friend or attorney for advice before reporting for the meeting.

3. The holding of the defendant in custody without access to friends or counsel when the State admits no probable cause for defendant's arrest existed prior to the confession. See Clewis v. Texas, supra; Davis v. Mississippi, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (April 22, 1969); Culombe v. Connecticut, 367 U.S. 568, 607, 81 S.Ct. 1860, 6 L.Ed.2d 1037.

4. Under the State's testimony, the initial intensive interrogation lasted from 11:45 a. m. to 2:45 p. m. Defendant was then led to and told to wait in an adjoining room. The interrogation was resumed at 6:30 p. m. and no admission was obtained prior to 8:00 p. m. The statement was taken about 10:00 p. m. and was not signed until about midnight.

5. Mr. Reid, who conducted the interrogation, is an experienced criminal investigator obtained from Chicago and is coauthor of works on criminal interrogation and confessions. His publications and tactics are discussed in considerable detail by Chief Justice Warren in Miranda at pp. 449 to 458 of 384 U.S., at pp. 1614 to 1619 of 86 S.Ct. The use of some of the tactics advocated in the book are admitted by Reid. The interrogation took place in a small room without windows with only Reid and the defendant present. Reid had defendant sit at a table facing him with their knees touching each other. Reid admitted patting the defendant on the shoulder and stroking defendant's hair a number of times. He insisted defendant constantly look him in the eye and lifted up the defendant's chin from time to time to accomplish this objective. Defendant was subjected to a lie detector test and was told that the machine revealed he was lying. Defendant was accused a number of times of murdering his wife. Such activity clearly appears to go beyond approved standards. [4]

4. Dr. Kelley, a highly qualified psychiatrist and professor of criminology who ordinarily testified for the government, as a result of an examination of the defendant testified:

"I think basically he is a dependent, to a degree, immature, person; a person who has never been around much, naive in his structure. And I think he was largely, early in life, dependent on his

6. Defendant had been under a great strain by reason of the death of his wife. This situation prevails whether or not defendant was the murderer. He left Des Moines for Lincoln, a distance of 225 miles, about 7:00 a. m. The questioning began immediately after his arrival at Lincoln. He breakfasted at 6:30 a. m. and went without food until 6:30 p. m. when he was given a sandwich and milk.

7. The written confession obviously contains statements known by Parker to be wrong on matters immaterial to his guilt, such as the place of his birth and that of his father and mother.

The foregoing circumstances are based on admitted facts or upon evidence that he has not been substantially contradicted. Parker's version of what transpired at the interview, at least to the extent it has been contradicted by Reid, has been given no consideration by us in reaching our conclusion.

The only factor of substance which might have a tendency to support voluntariness mentioned by the Nebraska courts is the fact that Parker held a college degree in forestry, that he was intelligent and held a responsible position. He had no previous criminal experience and there is no reason to believe that he was aware of or that he voluntarily waived his constitutional rights. While intelligence is a factor to consider in the coercion issue, there can be no doubt that people of intelligence are susceptible to mental coercion.

The crucial issue for review before us is that stated in Davis v. North Carolina,

384 U.S. 737, 739, 86 S.Ct. 1761, 1763, 16 L.Ed.2d 895, as follows:

"We are not called upon in this proceeding to pass on the guilt or innocence of the petitioner of the atrocious crime that was committed. Nor are we called upon to determine whether the confessions obtained are true or false. Rogers v. Richmond 365 U.S. 534, 81 S.Ct. 735, 5 L.Ed.2d 760 (1961). The sole issue presented for review is whether the confessions were voluntarily given or were the result of overbearing by police authorities."

We note in passing that the defendant took the stand at his trial and categorically denied that he had murdered his wife and further denied that any differences of substance existed between them. The prosecution conceded in oral argument and we concur in such view that the record, absent the confession, would not support the conviction. With the confession before it, the jury deliberated two days before returning the guilty verdict.

We hold as a matter of law that when the totality of the circumstances are considered and when the facts in this case are compared with those in the cases hereinabove discussed, a determination is required that the confessions received in evidence were coerced and involuntary, and that the defendant's constitutional rights were violated by the reception of the confessions in evidence and the submission thereof to the jury.

The judgment appealed from is reversed upon the basis that all confessions presented were coerced and involuntary and hence improperly received in

parents for guidance. I think when he married he then became definitely dependent upon his wife."

He then stated:

"Because I heard Mr. Reid testify that he had touched Parker's head and stroked it, put his arm on his shoulder, kept his chin up a bit and made Parker look him in the eye. This is a typical persuasive technique which can yield an almost hypnotic trance pattern. And I think with Darrel, the state he was in —the accusations that Reid made, the fact that he did accuse Darrel of the crime, that he told Darrel that he knew he had done it—this constant, progressive persuasion, I think, would have been enough to snap him over, regardless of whether anything else took place or not."

evidence in violation of defendant's federal constitutional rights. This case is remanded to the federal trial court for further proceedings consistent with the views expressed in this opinion. The State is granted ninety days from the date this judgment becomes final to retry Parker and the federal district court under appropriate showing may grant a reasonable extension of such time. If the defendant is not retried within the time hereinabove fixed or within any extension of such time as may be allowed, writ of habeas corpus shall be granted and the defendant shall be released.

Reversed and remanded.