STATE of Missouri, Respondent,

v.

Richard DEVOE, Appellant.

No. 52803.

Supreme Court of Missouri,
Division No. 2.

June 10, 1968.

Motion for Rehearing or for Transfer to
Court En Banc Denied July 8, 1968.

Norman H. Anderson, Atty. Gen., Walter W. Nowotny, Jr., Asst. Atty. Gen., Jefferson City, for respondent.

Walter Rohlfing, St. Louis, for appellant.

STOCKARD, Commissioner.

Defendant Richard Devoe was charged by indictment with murder in the first degree. He was found guilty by a jury and sentenced to life imprisonment. At trial and on this appeal defendant was represented by employed counsel of his choice.

Defendant first contends that "no legally competent evidence was adduced by the State to make a submissible case."

A jury reasonably could find the following facts. On February 18, 1966, defendant and two companions, Richard Youngerman and Sam Mandino, were in Youngerman's automobile. They stopped at a Western Auto Store and purchased "some slugs," which apparently referred to bullets for a .38 caliber pistol. Mandino asked if they wanted to "kick in a place," and said it would be worth about $10,000. They parked their automobile, walked to the real estate office of Mr. William Hemmersmeier. Mandino had a gun. The three of them donned "stocking masks," knocked on the door, and when the door was opened they "pushed in." Three shots were immediately fired. Mr. Hemmersmeier was shot, and by reason thereof he later died. Defendant was also shot, and he left the office. His two companions helped him to the automobile. Later that evening defendant was found lying in the street near the City Hospital, and he was taken in and given medical treatment. The bullet which killed Mr. Hemmersmeier was removed from his body, and the bullet which wounded defendant was also recovered. The police found a third bullet in Mr. Hemmersmeier's office. These three bullets were examined by a ballistic expert, and all of them had been fired from the same gun. On February 19, the day following the shooting, Youngerman was arrested. In his automobile there were stains made by human blood which was identified as "type O with the M factor present." This was defendant's type of blood.

■ From the facts as above outlined the jury reasonably could find that defendant and his two companions were engaged in perpetrating or attempting to perpetrate a robbery when Mr. Hemmersmeier was shot and killed. This authorized the finding that defendant was guilty of murder in the first degree pursuant to what is known as the felony-murder doctrine. Section 559.010 RSMo 1959, V.A.M.S. State v. Burnett, 365 Mo. 1060, 293 S.W.2d 335.

Before we consider defendant's remaining point, certain procedural matters should be noted. After the jury was sworn and prior to the opening statements of counsel, at the request of defendant a hearing was held out of the presence of the jury "on the voluntariness of the statement" made by defendant to police officials at the hospital. On March 2, 1966, after the doctor in charge gave permission, Police Sergeant Dwyer and Mr. Melroy Hutnick, an assistant circuit attorney, questioned defendant at the hospital, and defendant made oral statements amounting to a confession of the crime of which he was charged. At the preliminary hearing Sergeant Dwyer testified in detail concerning the circumstances under which defendant made the oral statements, and he related the warnings that were given to defendant by Mr. Hutnick in advance of the interrogation pertaining to his right to remain silent, his right to the presence of counsel, and that anything he said could be used against him in a court. He also testified that defendant was told that "if an attorney was there the attorney would probably tell him not to make a statement." Defendant then called Mr. Hutnick to testify, and his testimony pertaining to the warnings to defendant and the circumstances of his making the oral statements were substantially the same as that of Sergeant Dwyer. Defendant also called his mother and sister as witnesses. Their testimony was to the effect that on February 19, the day after defendant was shot, and while he was critical, they had seen police officers talking to defendant, but they did not know what about. (We note that it is probable that if the police talked to defendant on February 19 it was with the purpose of investigating a crime of which they believed defendant was the victim). Sergeant Dwyer and Mr. Hutnick both testified that they did not talk to defendant on February 19, and that they first talked to him on March 2. Defendant did not testify at this hearing, and there was no testimony which

conflicted with what Sergeant Dwyer and Mr. Hutnick said had occurred on March 2.

At the conclusion of this hearing, counsel for defendant objected as follows: "I object to the testimony [of the oral statement of defendant] on the grounds that due to the seriousness of the case he should have had an attorney there. * * * The officer stated that he [defendant] was advised. Well, my objection would be that due to the seriousness of the case no statement should have been taken without an attorney being present and advising him, under the Miranda and Escobeda case." Subsequently, counsel for defendant stated that the "reason [he was] objecting to the statement taken by Mr. Hutnick is that Mr. Hutnick, being a lawyer, and knowing the law and seriousness of this charge, it was unfair for him [a lawyer] to take a statement * * of a young boy who does not know the law and did not know his constitutional rights." The trial court overruled these objections. We mention at this point that at the trial before the jury, and after eighteen witnesses had testified for the state, Sergeant Dwyer testified, without further objection on the part of defendant, to the circumstances under which he and Mr. Hutnick talked to defendant in his hospital room on March 2, and he then related statements made by defendant which were in effect an oral confession of the crime with which he was charged. No evidence contrary to the testimony of Sergeant Dwyer as to the circumstances of taking the statement was presented to the jury.

■ After this case was submitted on appeal, although the matter is not urged by defendant in his brief, this court concluded that the trial court did not comply with all of the requirements of Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908, 1 A.L.R.3rd 1205, in that the conclusion of the trial court that the statements of defendant amounting to an oral confession were voluntarily made did not, in the language of Sims v. State of Georgia, 385 U.S. 538, 87 S.Ct. 639, 17 L.Ed.2d 593, "appear

from the record with unmistakable clarity." For this reason on March 14, 1968, this court entered an order that "the trial court, after giving counsel notice and with defendant present, shall hold a hearing and receive such additional competent and material evidence as shall be offered by the state and by defendant * * * and from a consideration of the evidence now in the record in this case and such evidence as may be received the trial court shall make an express finding as to whether said confession was or was not voluntary." That part of the order authorizing additional evidence was not necessary because the record not only authorized but practically compelled a finding of voluntariness; there being no evidence to the contrary. See State v. Glenn, Mo., 429 S.W.2d 225. On April 10, 1968, the hearing was held. The testimony of Mr. Hutnick and Sergeant Dwyer was substantially the same as at the previous hearing. However, at the second hearing defendant testified. He did not claim that he was threatened or in any way coerced by Mr. Hutnick or Sergeant Dwyer, and he admitted that the warnings testified to by them were given. He said other police officers or guards had talked to him prior thereto, and that one of them brought Richard Youngerman, his "fall partner," to his room and that Youngerman told defendant that he had "made a confession." According to defendant, the police officer told defendant, "I'll see you get life out of this," and then left the room. The trial court entered its findings that the oral confession made by defendant "was voluntarily made and was not procured by coercion, threats, fear, promises of leniency or any other consideration," and also that defendant "knowingly and intelligently waived his privilege against self-incrimination and his right to counsel." These findings are supported by the evidence, and the record affirmatively shows compliance with the requirements of Jackson v. Denno, supra.

We turn now to defendant's remaining point in his brief which is that he "was not furnished counsel after his arrest," and he "was not supplied with counsel before

being interrogated by [Sergeant] Philip Dwyer of the St. Louis Police Department and Melroy Hutnick, Assistant Circuit Attorney of St. Louis, Missouri, in violation of the Escobedo and Miranda cases." In his brief he argues that "due to the fact that [he] was charged with the most serious crime known to the law [he] should have been supplied with counsel before he was interrogated."

Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977, and Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, both recognize that a defendant may knowingly and intelligently waive the right to the presence of counsel during interrogation by police officials. Therefore, the fact alone that he was charged with first degree murder and not "supplied with counsel" does not necessarily establish a violation of the principle of either of those two cases. The record in this case affirmatively shows that prior to any statement being made by defendant he was told by Mr. Hutnick that he had the right to remain silent, that anything he said could be used against him in court, that he had the right to have an attorney present, and further that "if an attorney was there that the attorney would probably tell him not to make a statement." Notwithstanding these statements by Mr. Hutnick, defendant made his oral statements to Mr. Hutnick and Sergeant Dwyer, and he does not contend that he did not knowingly and understandingly do so. The interrogation of defendant took place before the opinion in Miranda v. State of Arizona, supra, was handed down but the trial occurred thereafter. Mr. Hutnick admits that he did not tell defendant that if he could not afford counsel one would be appointed for him, his explanation being that at that time he had no reason to anticipate that this would be one of the so-called procedural safeguards that would later be announced in Miranda v. State of Arizona. Some additional facts are relevant. At the hearing on April 10, 1968, defendant admitted that he had previously been arrested

"around" three hundred times, that he had served time in the "workhouse" and in the Algoa Reformatory, that he knew there was a public defender in St. Louis, and that he previously had been represented by appointed counsel or the public defender. His counsel at the trial, who was employed and not appointed, was familiar with the Miranda decision, but at the conclusion of the hearing on the voluntariness of the statements of defendant and at the time the statements were offered in evidence no specific objection was made that defendant had not been told prior to making his statements that if he could not afford counsel the court would appoint counsel for him.

There are two reasons why the failure to advise defendant, before Miranda v. State of Arizona was handed down, of the fourth procedural safeguard set out therein should not now require a reversal of the judgment in this case. First, the purpose of the warning is to apprise the defendant of a right, but in view of defendant's admissions and his previous experiences the recital to him that if he could not afford a lawyer one would be appointed for him would have added to his knowledge nothing that he did not already know. The requirements of Miranda v. State of Arizona would not be held sufficient because the required warnings were recited to a person who could not understand them, and for the same reasons the absence of a recital of a warning should not preclude the admission of a confession when it would have added nothing to the defendant's knowledge.

Second, the failure to object specifically to the introduction of the statements on the ground that the defendant was not told that if he could not employ counsel the court would appoint counsel for him removes this issue as a basis for subsequent complaint. We note that in addition to no specific objection being made at trial or in the motion for new trial, the point in defendant's brief on this appeal is not directed at this objection.

In State v. Price, Mo., 422 S.W.2d 286, the objection at trial to the statement of

the defendant was that "he was not fully advised of his constitutional rights," and there, as here, the defendant was fully advised except that if he could not afford an attorney one would be appointed for him prior to questioning if he so desired. This court held that the objection was too broad to preserve a valid objection to the failure to advise the defendant in the respect mentioned. In the pending case, the word "Miranda" was used, but the basis of the objection was never presented to the trial court. In State v. Price, this court said this:

"Under *Miranda* police authorities are required to follow scrupulously each and all of four specific procedural safeguards or rights the Court delineates as Fifth Amendment rights of an individual in custody or otherwise deprived of his freedom. To ensure the enforcement of these rights, the Court further said, 86 S.Ct. 1. c. 1630, 'But unless and until such warnings * * * are demonstrated by the prosecution at trial, no evidence obtained as a result of interrogation can be used against him.' Thus, if the state proves that the authorities afforded him three of these rights but fails to prove they afforded him the fourth, evidence obtained from him is inadmissible. Should an objection be held to be sufficient to preserve for review Fifth Amendment rights, as so delineated, where the objection fails to specify which of those rights have been afforded the defendant? No. He is required to be as specific in stating the grounds or reasons for his objection as the authorities are required to be specific in advising him of each of his rights."

It has long been the rule that constitutional questions must be raised in the trial court at the earliest opportunity consistent with orderly procedure. State v. Meiers, Mo., 412 S.W.2d 478, 481. "The defendant in a criminal case, if he proposes to raise a question pertaining to the violation of such right, must object to the introduction of his confession nor admission, *clearly*

*and specifically stating his constitutional grounds for the objection;* otherwise, the introduction of his confession or admission will not be sufficient basis for an assignment of error in his motion for new trial. His motion for new trial must present and direct the trial court's attention to his trial objections by clearly stating with particularity his constitutional grounds." State v. Price, supra *422 S.W.2d at p. 289.*

In this case, the objection at trial did not specifically present the issue of the failure to warn or tell defendant that if he could not afford an attorney one would be appointed for him before interrogation, the motion for new trial did not specifically mention this issue, and the point in defendant's brief on this appeal does not present this issue. Under these circumstances there is no merit to defendant's second and final point.

The judgment is affirmed.

BARRETT and PRITCHARD, CC., concur.

PER CURIAM:

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

FINCH, P. J., concurs in Separate Concurring Opinion filed.

DONNELLY and EAGER, JJ., concur in result and concur in separate concurring opinion of FINCH, P. J.

CONCURRING OPINION

FINCH, Presiding Judge.

I concur in the result reached in the principal opinion and with what is said therein with this exception: The principal opinion advances two reasons for holding that the judgment of conviction need not be reversed for failure to advise defendant that the state would furnish counsel if he could

not afford same. Instead of those two grounds, I would hold that failure to give the defendant this admonition was not error for the following reason:

In explaining the need for the fourth procedural safeguard required by Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, Chief Justice Warren, speaking for the majority, said (384 U.S. 1. c. 473, 86 S.Ct. 1. c. 1627):

"In order fully to apprise a person interrogated of the extent of his rights under this system then, it is necessary to warn him not only that he has the right to consult with an attorney, but also that if he is indigent a lawyer will be appointed to represent him. Without this additional warning, the admonition of the right to consult with counsel would often be understood as meaning only that he can consult with a lawyer if he has one or has the funds to obtain one. The warning of a right to counsel would be hollow if not couched in terms that would convey to the indigent—the person most often subjected to interrogation—the knowledge that he too has a right to have counsel present. As with the warnings of the right to remain silent and of the general right to counsel, only by effective and express explanation to the indigent of this right can there be assurance that he was truly in a position to exercise it."

 It is obvious from the above quotation that the reason for the fourth procedural requirement is to make meaningful to indigent persons the third procedural requirement that the defendant be informed of his right to consult with an attorney. It is not intended to protect one who has the funds with which to employ an attorney. Suppose, for example, that a wealthy person is arrested and he is warned that he has the right to remain silent, that anything he says could be used against him, and that he has the right to the presence of an attorney. Such warning fully protects his constitutional rights. It would serve no useful purpose whatsoever to inform him

further that the state will furnish counsel free if he cannot afford counsel. To hold that failure to give the fourth warning to the man able to afford an attorney makes a confession inadmissible would be to emphasize and substitute form for substance in the protection of constitutional rights. In my judgment, it is crystal clear from the language of Chief Justice Warren that the procedural requirement No. 4 was not intended to protect one who can afford counsel, and it follows therefrom that failure to give such warning to one able to furnish counsel cannot be a violation of his constitutional rights and cannot be a basis for excluding a confession otherwise admissible.

The defendant herein actually was defended in the trial of this case by employed counsel. He did not request the appointment of counsel and did not claim to be indigent. Under such circumstances, he is in no position to assert that the failure to receive warning No. 4 required by Miranda is any basis for excluding his confession.