**STATE of Missouri, Respondent,**

v.

**Robert C. HOWELL, Appellant
(two cases).**

**Nos. 58283, 58768.**

Supreme Court of Missouri,
En Banc.

June 9, 1975.

---

John C. Danforth, Atty. Gen., David Robards, Asst. Atty. Gen., Jefferson City, for respondent.

Harry H. Bock, New Madrid, for Appellant; Robert C. Howell, in pro. per.

BARDGETT, Judge.

These are appeals by Robert C. Howell from a judgment in No. 58283 convicting him of murder in the first degree of David Blankenship and sentencing him to life imprisonment, and from a judgment in No. 58768 convicting him of assault with intent to kill with malice aforethought of Randy Krebs and sentencing him to ten years. The offenses arose out of the same event, but the two cases were tried separately. The verdict in the murder case was returned on January 30, 1973, and in the assault case on March 19, 1973.

The notice of appeal in the murder case was filed March 16, 1973, with the appeal being taken directly to this court. This court has jurisdiction. Art. V, § 3, Mo. Const., V.A.M.S., as amended 1970, and order of this court of April 9, 1973, retaining jurisdiction of appeals filed prior to April 9, 1973, involving convictions for offenses punishable by life imprisonment or death.

The appeal in the assault case was properly taken to the Missouri Court of Appeals, Springfield District. Art. V, § 3, Mo.Const., as amended 1970. The court of appeals recommended transfer of the cause to this court prior to opinion pursuant to Art. V, § 10, Mo.Const., as amended 1970, and order of this court of December 18, 1973. The court, pursuant to said recommendation, ordered the appeal transferred.

The defendant does not contend that the state failed to make a submissible case against him in either case. The court has reviewed the record in both cases and finds that the state made submissible cases even when that portion of the evidence which defendant contends was obtained in an unconstitutional manner is not considered.

The evidence in both cases was essentially the same. At about 1:00 a. m. on Sunday, November 19, 1972, David Blankenship's car was found parked on the levee just east of New Madrid with David Blankenship and Randy Krebs inside. Blankenship had been shot in the head behind the right ear and was dead. Krebs had been shot in the left ear but was alive and survived after an extended stay in a hospital. Defendant was charged with the murder of Blankenship and the assault on Krebs.

In both appeals defendant contends that there was no warrant or probable cause for his arrest and therefore certain items seized from him at the time of arrest, clothing items obtained from his home, and results of tests done on both groups of clothing were not admissible in evidence against him as having been obtained in violation of the

search and seizure provisions of the U.S. Const., Amends. 4 and 14, and Art. I, § 15, Mo.Const. Defendant also contends in the assault case that a gun residue test and its results are inadmissible for the same reason.

About 10:00 a. m., Sunday, November 19, 1972, Deputy Sheriff Ivy arrested defendant on a street in New Madrid, Missouri, and took him to a nearby building where Mr. Ivy took a black coat and a package of cigarettes from him. These items were turned over to the Missouri Highway Patrol and certain tests were made.

About thirty minutes after defendant's arrest, Mr. Ivy went to defendant's place of residence in New Madrid which is the home of Mary Howard. Mary Howard is defendant's stepmother. Mr. Ivy asked her for defendant's clothing. Mrs. Howard went to a room or rooms in her house and brought defendant's clothing, including a pair of green pants, a green shirt, and a pair of shoes, to the door and gave them to Mr. Ivy. There was no search of Mrs. Howard's home.

The officers found vomit in the automobile in which Blankenship and Krebs were found. Analysis of the vomit revealed the presence of pear and marijuana particles. Three swatches taken from the black coat seized upon defendant's arrest revealed the presence of human blood of an inconclusive type. A fourth swatch taken from the black coat revealed a vomit stain with pear and marijuana particles contained therein. The cigarette package, which was introduced only in the murder trial, had upon it a stain of human blood of an inconclusive type.

As noted, the green shirt and green pants were obtained from Mary Howard. A sample taken from the seat of the green pants revealed a vomit stain with pear and marijuana particles contained therein.

In the assault trial, Blankenship's jacket, the one he was wearing on the night he was murdered, was introduced into evidence. The jacket contained human blood stains of an inconclusive type, particles of marijuana, and vomit residue with pear particles contained therein.

In both trials, the substance of an expert witness's testimony was that, in his opinion, the vomit specimens found on the black coat, on the green pants, and in the car, were the same due to the similarity in the pear particles and the similarity in the particular characteristics of the marijuana particles found in each of the specimens. Additionally, in the assault trial, the expert witness testified, in substance, that the marijuana particles found on Blankenship's jacket were the same as the marijuana particles found in the vomit stains on the black coat, on the green pants, and in the car; and that the vomit containing pear particles found on Blankenship's jacket was the same as the vomit stains on the black coat, on the green pants, and in the car.

About an hour or so after defendant was arrested by Deputy Ivy, there was a gun residue test done on defendant's hands at the New Madrid County jail. This involves swabbing the palms and back of the hands with a solution. Thereafter, the swabs are tested for the presence of barium and antimony materials that are present in the primer of ammunition in order to form an opinion as to whether the subject has recently fired a gun. The testimony in both cases was that the gun residue test revealed that defendant had recently fired a gun.

Prior to the first trial, the defendant filed a motion, applicable to both cases, to suppress the items of clothing seized from him at the time of his arrest, the items of clothing obtained from Mrs. Howard at defendant's residence, and any test results made on the clothing.

The basis for the motion was that the seizure of the clothing from defendant and that obtained from Mrs. Howard constituted an unconstitutional search and seizure

under Art. I, § 15, Mo.Const., and Amends. 4 and 14 of the U.S.Const., and this contention is based upon the assertion that the arrest of defendant was invalid as being without warrant and without probable cause.

The motion to suppress did not attack the gun residue test. Whether or not defendant or his attorney knew that the swabbing of defendant's hands was such a test is not known. The evidence as to the gun residue test results was admitted in the murder trial without objection. In the subsequent assault trial, defendant did object and preserved the alleged error for review.

The trial court held a hearing on the motion to suppress. The defendant did not testify. Witnesses called by defendant established that no warrant for the arrest of defendant was applied for or issued prior to the arrest and that no search warrant was issued at any time. Mr. Ivy testified, but his testimony begins with the arrest of the defendant, and he gave no testimony at all as to any information he (Deputy Ivy) had which caused him to arrest the defendant. The court has reviewed the evidence given at the preliminary hearing and at the trials. Nowhere is there any evidence that Deputy Ivy had any information, prior to the arrest of defendant, with respect to defendant's involvement in the shooting of Blankenship or Krebs. It was simply not the subject of any questions asked of or of any answers given by Deputy Ivy.

The state conceded in its briefs and in oral argument that, "There is no showing in the record that there was any probable cause of the officers to make the arrest." The court has, nevertheless, examined the record and finds the concession to be accurate.

■ The state's position is that the burden of showing that the arrest was illegal is upon defendant and that because there was no showing that the arrest was *without* probable cause and therefore illegal the court did not err in overruling the motion to suppress nor in admitting the evidence over defendant's in-trial objection which continued to be premised on constitutional grounds. However, the state candidly states in its brief:

"The respondent recognizes that the legality of the method of obtaining some, if not all, of the evidence sought to be suppressed depends on the legality of appellant's arrest. Given the facts which have been stated above, it would seem that some courts in this situation would reason as follows: The presumption of regularity which attends official acts made by public officers extends to arrests made pursuant to warrants but not warrantless ones. When the legality of an arrest is contested and the arrest is shown to be warrantless, it is incumbent upon the party asserting the validity of the arrest to show that the arrest met constitutional standards of probable cause. In this case, since the appellant demonstrated that his arrest was warrantless and it was not shown that there was probable cause to make the arrest, the motion to suppress should have been sustained and the evidence suppressed. *See* Sexton v. Gibbs, 327 F.Supp. 134 (N.D.Tex.1970), aff'd mem., 446 F.2d 904 (5th Cir. 1971), cert. denied 404 U.S. 1062, 92 S.Ct. 733, 30 L.Ed.2d 751 (1972); Manuel v. United States, 355 F.2d 344 (5th Cir. 1966); Rogers v. United States, 330 F.2d 535 (5th Cir. 1964). Basically, this authority reasons that once an arrest is shown to be warrantless, the burden of persuasion shifts to the party asserting the legality of the arrest to show that it was made with probable cause. If this authority were to be followed by this court, the conclusion would have to be that the trial court erred in overruling the appellant's Motion to Suppress because, as previously indicated, there is nothing in the record to show that there was probable cause for appellant's arrest. . . ."

In State v. Wiley, 522 S.W.2d 281 (Mo. banc 1975), this court held, ". . . 'The

lawfulness of the arrest without warrant, in turn, must be based upon probable cause, which exists "where 'the facts and circumstances within their (the officers') knowledge and of which they had reasonably trustworthy information (are) sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed." Brinegar v. United States, 338 U.S. 160, 175, 176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879, 1890 (1949), quoting from Carroll v. United States, 267 U.S. 132, 162, 45 S.Ct. 280, 69 L.Ed. 543, [555], 39 A.L.R. 790 (1925).' Ker v. California, 374 U.S. 23, 34–35, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963)." And further, "Whether there was probable cause to arrest . . depends on the information in the officers' possession prior to the arrest. Of course, all the information in the possession of the officers and all reasonable inferences therefrom are pertinent to determine probable cause."

In the instant case, there is simply no evidence as to what, if any, information was in the hands of the officers prior to the arrest. The state's analysis set forth supra is correct. The state had the burden of showing probable cause for this warrantless arrest and failed to do so. The court erred in overruling defendant's motion to suppress as to those items seized from defendant's person at the time of his arrest and erred in admitting those items and the test results produced in direct consequence of the seizure of those items over defendant's constitutionally-grounded objection made during the trials.

■ The court also overruled defendant's motion to suppress the items of clothing obtained from Mary Howard and admitted certain of those items into evidence as well as the results of certain tests done on that clothing and their contents. The trial court was correct in its rulings with respect to the items received from Mrs. Howard and the consequent test results.

The officer went to the door of Mrs. Howard's house and asked her for defendant's clothing. Mrs. Howard got the clothing and gave it to the officer. There was no search; the officer did not coerce Mrs. Howard; and the circumstances do not suggest that Mrs. Howard should be regarded as an instrument or agent of the state when she produced defendant's clothing.

A factual situation practically indentical to the instant case was presented in Coolidge v. New Hampshire, 403 U.S. 443, 448, Part III, B, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). There the wife of the defendant admitted policemen into the house and voluntarily gave them her husband's clothing and guns. The court held there was no violation of the defendant's constitutional protection against unreasonable searches and seizures. The point is overruled. See also Deckard v. State, 456 S.W.2d 35, 37 (Mo.1970).

■ About an hour after defendant was arrested, an officer performed the gun residue test on defendant's hands at the police station. The test results were admitted in evidence in the murder case without objection. The defendant objected to the test results in the subsequent assault trial on the ground that the test, having been done pursuant to an illegal arrest, was violative of his U.S. and state constitutional rights against unreasonable searches and seizures.

In considering the question of whether the performance of the gun residue test on defendant's hands violated his rights against unreasonable searches and seizures under Art. I, § 15, Mo.Const., and Amends. 4 and 14, U.S.Const., it must be borne in mind, (1) that the defendant was under arrest and in custody; (2) that on the present record in the trial court and here the arrest was not shown to be based on probable cause and therefore for the purpose of these appeals must be considered to be invalid; and (3) no clear waiver (or any

waiver) of search and seizure rights has been shown.

Additionally, there is no question but what the performance of the test on defendant's hands and the taking of sample residue therefrom was a search and seizure. This is borne out by a number of cases. In Davis v. Mississippi, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969), the taking of fingerprints of arrested persons was held to be a search and seizure. The fingerprints were held to be inadmissible because there was no probable cause for the arrest. In Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), the taking of blood for testing was a search and seizure but the chemical analysis of the blood was admissible because the arrest was valid. The real issue in *Schmerber* was whether a search warrant was necessary even though the arrest was valid when the focus of the search was a substance which was part of the person of the defendant and highly evanescent in nature. In United State v. D'Amico, 408 F.2d 331 (2d Cir. 1969), the clipping of strands of hair from the head of an arrested defendant was a seizure, although it was upheld because D'Amico was under valid arrest. In United States v. Richardson, 388 F.2d 842 (6th Cir. 1968), the examination of defendant's hands under an ultraviolet light to test for fluorescent powder was held valid as taken prior to an arrest and with defendant's consent. Although the court said it did not regard the test in *Richardson* as a search and seizure within the meaning of the 4th Amend., the decision was based upon voluntary consent prior to arrest at a time when defendant was not in custody and was distinguished on that ground in United States v. Kenaan, 496 F.2d 181, 182, Fn. 1 (1st Cir. 1974).

In United States v. Kenaan, *supra,* government agents obtained a warrant to search defendant's apartment for cocaine. A package had previously been coated with a fluorescent powder which would appear on the hands of one handling the package under an ultraviolet light. The agents found defendant at home, conducted a search, and discovered a spoon containing some residue which later was determined to be cocaine. While the agents were in the apartment and before arresting defendant, they used the ultraviolet light on defendant's hands and it revealed traces of the fluorescent powder. Defendant was then arrested, tried, and convicted of possessing cocaine. Defendant contended the inspection of his hands violated his search and seizure rights. The court held at 496 F.2d 182:

"... There can be little doubt that an inspection of one's hands, under an ultraviolet lamp, is the kind of governmental intrusion into one's private domain that is protected by the Fourth Amendment. Mancusi v. DeForte, 392 U.S. 364, 88 S.Ct. 2120, 20 L.Ed.2d 1154 (1968); Warden v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967). If the reach of the Fourth Amendment extends to fingerprinting, Davis v. Mississippi, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969), and a search of one's clothing or personal effects, United States v. Micheli, 487 F.2d 429 (1st Cir. 1973), it should certainly encompass a detailed inspection, by special instrument, of one's skin."

The court in *Kenaan* reversed and remanded the case for a new trial principally on instructional error, but noted that on remand the district court would have further opportunity to decide whether probable cause existed for the arrest before the inspection of appellant's hands took place. If so, then the hand inspection could become admissible at the new trial as having been done *immediately* after the arrest so as to be practically contemporaneous therewith, *if there was probable cause to arrest before the search* (hand inspection) *took place.*

In Cupp v. Murphy, 412 U.S. 291, 93 S.Ct. 2000, 36 L.Ed.2d 900 (1973), the taking of scrapings from under the fingernails of de-

fendant was a search and seizure. There, defendant heard that his wife, with whom he had not been living, had been murdered, so he voluntarily went to the police station for questioning. While he was there, an officer noticed a dark spot on defendant's finger. Suspecting that the spot was dried blood, and knowing that evidence of strangulation is often found under an assailant's fingernails, the police asked Murphy if they could take a sample of scrapings from his fingernails. He refused and under protest the police took the scrapings which proved incriminatory.

In Cupp v. Murphy, *supra,* the United States Supreme Court held the search of the fingernails to be constitutionally permissible in the circumstances prevailing at the time. The court said that the police had reasonable cause to believe Murphy committed the murder; the detention was but brief; and pointed out that Murphy knew he would be released from the police station and was seen by the officers attempting to remove the substance which was highly evanescent from under his fingernails. It is also significant that Murphy went to the police station of his own volition and that there was no involuntary detention at the outset at all, the court saying at 294–295, 93 S.Ct. at 2003: "The respondent in this case, like Davis, was briefly detained at the station house. Yet, here, there was, as three courts have found, probable cause to believe that the respondent had committed the murder. The vice of the detention in Davis is therefore absent in the case before us. Cf. United States v. Dionisio, [410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973)]."

In the instant case, the defendant was taken into custody by an arrest—but without probable cause. He did not voluntarily go to the police station for questioning. There is no evidence to indicate defendant expected to be released, that he undertook to destroy any evidence, or that he was even aware of the possible presence of the residue on his hands.

The case of United States v. Robinson, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973), is often cited in search and seizure cases as being one of the latest pronouncements by the United States Supreme Court on that subject. But *Robinson* concerned a search of the person only, and the question was whether or not a *valid* custodial arrest for operating a motor vehicle after a revocation of his operator's permit would support a full search of his person—as opposed to a pat down for weapons—so as to validate the admission into evidence of the heroin that was found on his person in the trial of a charge of possession of heroin. The court held that the noted arrest authorized a full search of the person and was not violative of the Fourth Amendment of the U.S. Constitution.

The point of difference between Robinson and the instant case is that there was a valid arrest in Robinson; in the instant case, there was no showing that the arrest was valid.

The trial court erred in admitting the gun residue test into evidence in the assault case over defendant's constitutionally-grounded objection.

As noted supra, there was sufficient evidence upon which a jury could have found defendant guilty without considering the inadmissible evidence. The results of the tests made of the vomit on the black coat which defendant was actually wearing when arrested was powerful evidence of his presence in the car at the time of the shootings. The gun residue test results, admitted in evidence over defendant's objection in the assault trial, were certainly persuasive evidence that he had recently fired a gun. Therefore, this court concludes that the admission of this evidence was prejudicial error requiring the convictions in both

cases to be reversed and remanded for new trials.

▮ The state requests that the question of probable cause for arrest be remanded to the circuit court for further evidence and findings by the trial judge and thereafter permit defendant to appeal if the trial court finds probable cause for the arrest. This court has remanded cases to the trial court where that court failed to make sufficient findings for this court to perform its appellate function. The instant appeals, however, are not deficient in that respect. Here, the trial court held an evidentiary hearing on the motion to suppress and both parties had the opportunity to introduce whatever evidence they had on the subject. The court overruled the motion, and it is that ruling under the evidence introduced that is erroneous. Thus, it is seen that the record here is wholly sufficient for this court to perform its appellate function. The orderly administration of justice requires that when a time and place is provided for issues and evidence to be presented and rulings to be made thereon it must be utilized; otherwise, parties and courts will be forever dealing with piecemeal appeals and with evidence given as an afterthought to support a judgment already entered.

▮ A trial court's ruling on a motion to suppress evidence prior to trial is, in a sense, interlocutory in nature. The real damage is not done until the evidence is introduced in the trial of a case for consideration by a jury. Thus, a trial court can receive additional evidence and change its ruling prior to admitting the objected-to items in evidence before a jury.

In Bynum v. United States, 104 U.S.App. D.C. 368, 262 F.2d 465 (1959), the court reversed a conviction and remanded the case for a new trial upon finding that the arrest of defendant was not shown to be with probable cause and, therefore, fingerprint evidence obtained while under illegal detention was inadmissible as being the product of an unconstitutional search and seizure, the court saying at 469: "We conclude that appellant is entitled to a new trial with opportunity accorded the parties to develop fully the facts which will establish whether the fingerprints in dispute were the product of an illegal arrest. Of course this issue will not arise if the prosecution elects to proceed without using the fingerprints taken at the time of appellant's arrest."

It is noted that in order for a gun residue test to produce any valid results—positive or negative—it probably must be done promptly as the residue on one's hand will probably disappear in the normal course of living or by being rubbed off of the hand. We say "probably" because this is a matter about which the court is not certain. Testimony by one familiar with this test could resolve the questions concerning the temporary presence of the residue on one's hands. This observation is made because in Schmerber v. California, *supra,* the United States Supreme Court held a blood alcohol test admissible when done following a *valid arrest* and dispensed with a search warrant requirement on the basis that the presence of alcohol in the blood was temporary and would dissipate in a short time. Under those facts the court held the blood alcohol test was an appropriate incident to Schmerber's arrest. 384 U.S. at 771, 86 S.Ct. 1826. Obviously one cannot "rub" the alcohol out of his blood but it dissipates or disappears quickly in the normal course of events.

In United States v. Love and Oglesby, 482 F.2d 213 (5th Cir. 1973), the defendants were convicted of bombing a building. Oglesby was validly arrested and taken to the police station where his hands were swabbed with an acetone solution to determine whether nitrate was present on his hands. The test result was affirmative. The case did not directly involve search and seizure issues but the court made the following observation which is appropriate to the instant case, stating at 482 F.2d 218:

"The nitrate on Oglesby's hands was even more likely to vanish than the materials lodged under Murphy's [Cupp v. Murphy, *supra*] fingernails, or the alcohol in Schmerber's [Schmerber v. Calif., *supra*] blood. The first vigorous scrubbing of the hands would have destroyed Murphy's material, but merely rubbing the hands would have destroyed the nitrate oils [on Oglesby's hands]."

The foregoing quote probably accurately describes what the defendant in the instant case could have done to remove the barium and antimony from his hands and thus destroy that evidence. If so, the search here—gun residue test—falls within the exception to search warrant requirements relating to destructible evidence if the arrest was valid. Chimel v. California, 395 U.S. 752, 763, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); Schmerber v. California, 384 U.S. at 770, 86 S.Ct. 1826.

In the instant cases upon remand for new trials, the state will have the opportunity, if it so chooses, to request a further evidentiary hearing to develop fully the facts, if it can, to show probable cause for the arrest, or it may choose to proceed to trial without using the evidence illegally seized. The defendant will have the opportunity to seek to suppress the gun residue test—the basic constitutional admissibility of which is also dependent upon probable cause for the arrest. Additionally, the state may desire to introduce evidence as to the nature of the residue which gets onto one's hands when he fires a gun and whether that residue is subject to disappearing of its own accord or is subject to easy removal by the suspect.

Defendant contends he was entitled to a *separate* preliminary hearing on each of the two charges.

The record reflects that the prosecuting attorney filed separate complaints in magistrate court—one alleging the murder of Blankenship and the other alleging the assault on Krebs. Defendant was represented by counsel and was fully aware of the two separate charges. Defendant requested separate preliminary hearings which request was denied upon the prosecutor's assertion that both complaints arose out of the same event and the evidence would be the same in both cases as to defendant's probable involvement.

■ A preliminary hearing cannot, itself, result in conviction but is solely for the determination of probable cause. No perceivable purpose would be served by having two preliminary hearings in the circumstances presented by these cases. Defendant was afforded a preliminary hearing which encompassed both charges which arose out of the same event. The point is overruled.

■ Defendant complains of the magistrate court's denial of his oral motion for copies of all witnesses' statements which ruling was made at the outset of the preliminary hearing. Defendant directs us to no authorities in support of his contention that he is entitled to discovery at the preliminary hearing stage of the proceedings.

Rules 25.30 through 25.45, V.A.M.R., effective July 1, 1974, which were not in effect at the time these cases were tried, concern discovery in felony cases arising after that date. Even now, Rule 25.30 states that Rules 25.30 through 25.45 shall "apply to all felony cases and discovery may commence *upon the filing of the indictment or information*." (Emphasis supplied.) Defendant was not entitled to the statements he sought at the preliminary hearing stage. The point is overruled.

Defendant's points relating to an alleged outburst by a witness, which will probably not occur on retrial, and his objections to the wording of the murder instruction, and the failure to give a manslaughter instruction in the murder case, which will not recur on retrial, need not be decided. As to the required instructions in murder cases, see Notes on Use, as amended by order of

January 13, 1975, effective March 1, 1975, MAI-CR 6.02, 6.06, and 6.08, and State v. Stapleton, 518 S.W.2d 292 (Mo. banc 1975).

In the assault case appeal, defendant contends the court erred in failing to instruct the jury on assault with intent to kill or do great bodily harm without malice. No such instruction was requested by the defendant.

 In the past and at this time the controlling factor with respect to the submission of a lesser offense in assault cases is whether the *facts in evidence* are sufficient to arguably show a lack of an essential element of the higher degree of the offense.

State v. Johnson, 461 S.W.2d 724 (Mo. 1971), is a case where no lesser assault instruction was required. The court analyzed the evidence and concluded that there was no evidence of self-defense, justification, or any extenuating or mitigating fact or circumstance suggestive of a lack of malice on the defendant's part in committing an unprovoked attack with a knife.

State v. Fine, 324 Mo. 194, 23 S.W.2d 7 (1929), is an example of a situation where the failure to submit an instruction on a lesser assault offense was error and the judgment was reversed and the case remanded for new trial. The court analyzed the evidence and concluded that there was sufficient evidence to submit the principal charge of assault with intent to kill with malice but also concluded that there were sufficient facts in evidence from which the jury could find that defendant did not intend to kill and also that the jury could find the assault was committed without malice. The court reversed and remanded for the failure of the trial court to give an assault-with-intent-to-kill-without-malice instruction and the failure to give a common-assault instruction.

In the instant assault case, there was no evidence of any mitigating circumstances at all. As such, it is similar to State v. Johnson, *supra,* and the court did not err in failing to give a lesser assault instruction under the law and presently prevailing procedure. The point is overruled.

 Defendant contends that by prosecuting him twice—once for murder of Blankenship and once for assault on Krebs—and using the same evidentiary facts in both cases, the state has violated his rights against double jeopardy under the United States and Missouri constitutions.

This issue was decided against defendant's contentions in State v. Moton, 476 S.W.2d 785 (Mo.1972). The point is overruled.

The judgments in cause numbers 58283 and 58768 are reversed and both cases are remanded for new trials.

DONNELLY, C. J., and SEILER and HENLEY, JJ., concur.

FINCH, J., dissents in separate dissenting opinion filed.

MORGAN and HOLMAN, JJ., dissent and concur in separate dissenting opinion of FINCH, J.

FINCH, Judge (dissenting).

I respectfully dissent from the principal opinion written in these two cases. I agree with the conclusion reached therein that the transcripts before us do not show probable cause for the arrest of defendant Howell and that for this reason the trial court erred in overruling defendant's motions to suppress those items seized from defendant's person at the time of his arrest and erred in admitting into evidence those items and the test results with reference thereto. My disagreement with the principal opinion is with reference to what relief this court should direct at this time.

In my view, we should by order remand both cases to the trial court for the purpose of a further evidentiary hearing on the issue of whether Deputy Sheriff Ivy had probable cause to arrest Howell at the time he was taken into custody. At such hearing the parties would have the opportunity to offer whatever proof they have on this issue, following which the trial court should make a finding on whether probable cause has been shown. The trial court then should certify to us the transcript of its supplementary hearing plus its findings and conclusions.

If, following this additional hearing, the trial court finds that the State has not established probable cause for defendant's arrest, then a new trial in both cases will be necessary and our opinion should so hold. On the other hand, if, on remand, based on additional evidence introduced, the trial court finds and we concur that there was probable cause for the arrest of defendant, a new trial will be unnecessary, and we should affirm the judgment of conviction. This necessarily follows because in that event seizure of the various articles incident to the arrest was proper and defendant would not have been prejudiced by the introduction of those items and the tests thereon in evidence.

There is ample precedent and authority for the procedure which I suggest. It has been approved and utilized by the Supreme Court of the United States on several occasions, as the following cases disclose.

In Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1963), defendant argued that he was entitled to have the trial judge, outside the hearing of the jury, decide whether his confession was voluntary and that this question of voluntariness should not have been left to the jury. The Supreme Court agreed, holding that Jackson had a constitutional right to such a determination by the trial judge and that he had not received an adequate and reliable determination of that issue. However,

having so held, the Supreme Court did not direct that the case be remanded for a new trial on guilt or innocence. Instead, it held that a procedure, such as I propose in this case, was proper and should be followed, saying, 378 U.S. at 393–95, 84 S.Ct. at 1790:

"It is New York, therefore, not the federal habeas corpus court, which should first provide Jackson with that which he has not yet had and to which he is constitutionally entitled—an adequate evidentiary hearing productive of reliable results concerning the voluntariness of his confession. *It does not follow, however, that Jackson is automatically entitled to a complete new trial including a retrial of the issue of guilt or innocence.* Jackson's position before the District Court, and here, is that the issue of his confession should not have been decided by the convicting jury but should have been determined in a proceeding separate and apart from the body trying guilt or innocence. So far we agree and hold that he is now entitled to such a hearing in the state court. *But if at the conclusion of such an evidentiary hearing in the state court on the coercion issue, it is determined that Jackson's confession was voluntarily given, admissible in evidence, and properly to be considered by the jury, we see no constitutional necessity at that point for proceeding with a new trial, for Jackson has already been tried by a jury with the confession placed before it and has been found guilty.* True, the jury in the first trial was permitted to deal with the issue of voluntariness and we do not know whether the conviction rested upon the confession; but if it did, there is no constitutional prejudice to Jackson from the New York procedure if the confession is now properly found to be voluntary and therefore admissible. If the jury relied upon it, it was entitled to do so. Of course, if the state court, at an evidentiary hearing, redetermines the facts and decides that Jackson's confession was involuntary, there must be a new trial on

guilt or innocence without the confession's being admitted in evidence.

"Obviously, *the State is free to give Jackson a new trial if it so chooses, but for us to impose this requirement before the outcome of the new hearing on voluntariness is known would not comport with the interests of sound judicial administration* and the proper relationship between federal and state courts." (Emphasis supplied.)

Subsequently, in Sims v. Georgia, 385 U.S. 538, 87 S.Ct. 639, 17 L.Ed.2d 593 (1967), hereinafter referred to as *Sims I*, the Supreme Court concluded that on the record before it the confession of defendant had not been sufficiently shown and determined to be voluntary and hence admissible. In so holding the Supreme Court said that the trial court must rule with unmistakable clarity as to whether the confession was voluntary and that the trial court had not done that. In addition, the Court pointed out that at the earlier trial the state had not produced as witnesses the police officers who had been present at the time defendant claimed he was mistreated prior to his confession and thus had failed to rebut defendant's testimony regarding physical abuse prior to his confession. However, having so held, the Supreme Court did not reverse and remand for new trial. Instead, following the procedure which had been utilized in Jackson v. Denno, supra, the Court remanded the case for an evidentiary hearing and a determination in the state court as to the voluntariness of defendant's confession.

Thereafter, following disposition in the state courts on remand, the Sims case returned to the Supreme Court in Sims v. Georgia, 389 U.S. 404, 88 S.Ct. 523, 19 L.Ed.2d 634 (1967), hereinafter referred to as *Sims II*. In this opinion the Court recognized that on remand the state trial judge had made a clear determination that the confession was voluntary. On that basis he had denied a new trial. However, the Su-

preme Court, concluding that the evidence was insufficient to establish voluntariness of the confession, reversed and remanded for a new trial. In so holding the Court said, 389 U.S. at 406, 88 S.Ct. at 525:

"Thus *in remanding the case for a hearing on voluntariness we indicated to the State that as the evidence then stood it had failed adequately to rebut petitioner's testimony* that he had been subjected to physical violence prior to his confession. *The State had every opportunity to offer the police officers*, whose failure to testify had already been commented upon here, *to contradict petitioner's version of the events. Its failure to do so when given a second chance* lends support to the conclusion that their testimony would not, in fact, have rebutted petitioner's." (Emphasis supplied.)

There are cases other than ones involving admissibility of confessions in which the Supreme Court has utilized this same type of procedure instead of reversing and remanding for a new trial at the outset. For example, in United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1966), one issue involved the effect of the absence of counsel for defendant at a lineup in which he had been required to appear. The Court concluded that defendant was guaranteed a right to counsel at said lineup by the sixth amendment to the Federal Constitution. The question then arising was what relief should be given as a result of the fact that counsel had not been provided at that time. The Court utilized a procedure comparable to that in Jackson v. Denno, saying, 388 U.S. at 239–40, 87 S.Ct. at 1939:

"*We come now to the question whether the denial of Wade's motion to strike the courtroom identification by the bank witnesses at trial because of the absence of his counsel at the lineup required*, as the Court of Appeals held, *the grant of a new trial at which such evidence is to be excluded. We do not think this disposition can be justified without first giving the*

*Government the opportunity to establish by clear and convincing evidence that the in-court identifications were based upon observations of the suspect other than the lineup identification."* (Emphasis supplied.)

Subsequently, the opinion says, 388 U.S. at 242, 87 S.Ct. at 1940:

"On the record now before us we cannot make the determination whether the in-court identifications had an independent origin. This was not an issue at trial, although there is some evidence relevant to a determination. That inquiry is most properly made in the District Court. We therefore think *the appropriate procedure to be followed is to vacate the conviction pending a hearing to determine whether the in-court identifications had an independent source,* or whether, in any event, the introduction of the evidence was harmless error, Chapman v. State of California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705, *and for the District Court to reinstate the conviction or order a new trial, as may be proper.* See United States v. Shotwell Mfg. Co., 355 U.S. 233, 245–246, 78 S.Ct. 245, 253, 2 L.Ed.2d 234." (Emphasis supplied.)

In United States v. Shotwell Manufacturing Co., 355 U.S. 233, 78 S.Ct. 245, 2 L.Ed.2d 234 (1957), a case cited and relied on in *Wade,* the defendants were convicted in federal court of willfully attempting to evade federal corporate income taxes. The conviction was reversed in the Court of Appeals on the ground that the privilege of defendants against self-incrimination had been violated by the admission of evidence obtained as a result of timely, voluntary disclosures made by them in good faith in the hope of obtaining immunity from criminal prosecutions under a policy then followed by the Treasury Department.

After petitioning the Supreme Court for certiorari, the government moved that the case be remanded to the district court on the ground that newly discovered evidence revealed that the testimony at the trial concerning the timeliness and good faith of respondents' disclosures was perjured and fraudulent. Defendants objected, contending that further proceedings below might work to the advantage of the government and that it was unfair to allow the government at that stage of the proceedings to bolster the record relating to the suppression issue. These objections were overruled by the Supreme Court which stated that in the district court both sides would have the opportunity to offer evidence with respect to the validity of the asserted voluntary disclosures. In the course of its opinion, the Court said, 355 U.S. at 244, 78 S.Ct. at 252:

*"We should not lose sight of the fact that the Government's new showing does not relate to an issue submitted to the jury in the proceedings below, but rather to a preliminary question as to the admissibility of evidence. Hence, to grant the Government's motion is not to permit it to 'bolster' the evidence upon which the verdict of guilty was returned by the jury in this case. That verdict clearly must stand or fall on the sufficiency of the evidence already introduced at the trial.*

"In these circumstances, acceptance of the respondents' position on this motion would be tantamount to sanctioning a rule which would prohibit appellate review upon a record suspect of taint, if the taint might operate to the disadvantage of the defendants, but which would nevertheless require review if the taint might operate to their advantage. We cannot subscribe to that quixotic result. The fair administration of justice is not such a one-way street." (Emphasis supplied.)

This court has followed the mechanism of Jackson v. Denno and other Supreme Court cases referred to herein on numerous occasions. State v. Ussery, 452 S.W.2d 146 (Mo. 1970); State v. Taggert, 443 S.W.2d 168 (Mo.1969); State v. Edwards, 435 S.W.2d 1

(Mo.1968); State v. Auger, 434 S.W.2d 1 (Mo.1968); State v. Devoe, 430 S.W.2d 164 (Mo.1968); State v. Glenn, 429 S.W.2d 225 (Mo. banc 1968).

In explaining its conclusion not to have the circuit court conduct a further evidentiary hearing on the issue of probable cause, the principal opinion states that the trial court held such a hearing on the motion to suppress at which both parties had an opportunity to introduce whatever pertinent information they had and that they should be held thereto and not permitted later to supply additional evidence to support the judgment previously entered. In so ruling, the principal opinion completely ignores the contrary conclusion reached by the Supreme Court of the United States in Jackson v. Denno, *Sims I, Sims II, Wade* and *Shotwell*. In fact, none of these cases are even mentioned. Instead, the principal opinion relies for its authority in requiring a new trial on the case of Bynum v. United States, 104 U.S.App.D.C. 368, 262 F.2d 465 (1959), a case decided prior to *Jackson, Sims I, Sims II* and *Wade*. Furthermore, this position taken in the principal opinion overlooks the nature of what is involved. We are not dealing with evidence relative to an issue to be resolved by the jury. Instead, we are concerned with evidence which relates to whether certain other evidence is admissible. If in this hearing outside the presence of the jury the judge determines that the officer had probable cause to arrest, then the articles taken from defendant incident to his arrest (and the tests performed thereon) are admissible in evidence and there is no need to retry the case on the theory that admission thereof in evidence prejudiced the defendant. They would be admissible in a new trial and, on the basis of the supplemental evidentiary hearing (assuming it to show probable cause) were admissible in the first trial. No new evidence bolstering the jury's verdict is involved.

The principal opinion comments that on occasion this court has remanded cases to the trial court pursuant to the Jackson v. Denno procedure for the purpose of further determination as to admissibility of evidence prior to this court writing its opinion and reaching a conclusion as to disposition of the case but that those have been instances where the lower court had simply failed to make sufficient findings for this court to perform its appellate function. Our prior decisions are not so limited. For example, in State v. Ussery, *supra*, this court by order directed the trial court to conduct a further hearing "giving the state and the defendant an opportunity to present evidence in addition to that contained in the transcript of the record," subsequent to which the trial court was to make an express finding as to whether the confession was voluntary. Such a hearing was held and a supplemental transcript of the testimony and findings was certified to this court. On the basis of that supplemental record this court then affirmed the finding of the trial court that the statements, admissions and confessions of the defendant were voluntary and that their admission into evidence was not prejudicial to the defendant. The court affirmed the judgment of conviction and no new trial was required.

In State v. Taggert, *supra*, the court entered a similar order. Further testimony was taken after which the trial court, made a finding that defendants' confessions were voluntary. On the basis thereof, the judgment of conviction was affirmed, the court concluding that admission of the confessions of defendants did not result in prejudice to the defense. Again the need for holding a new trial was avoided.

In State v. Devoe, *supra*, this court entered a similar order which provided for the trial court to conduct a hearing and receive such additional evidence as should be offered by the state or by the defendant and then make a finding as to voluntariness. At that subsequent hearing, additional testimony was taken after which the court made a finding that the confession was

voluntary. As a result of that supplemental hearing, the judgment of conviction was affirmed without a new trial.

If in *Ussery, Taggert,* and *Devoe,* this court had followed the procedure proposed in the principal opinion instead of ordering the trial court to conduct an additional Jackson v. Denno type of hearing on voluntariness and admissibility of the confessions, the courts of this state would have been required to conduct new jury trials with subsequent new appeals even though the confessions were found to be voluntary and hence admissible. The procedure followed avoided unnecessary retrials. Our experience in those instances demonstrates the utility and the desirability of the Jackson v. Denno procedure.

In recent years the volume of litigation, particularly criminal, has increased considerably. Our trial courts are busy trying to dispose of their dockets. Much emphasis is being placed, nationally and in this state, on efforts to find ways to simplify and expedite the disposition of cases. Under such circumstances, it seems completely unnecessary to me to reverse and remand these two cases for complete new trials and probable appeals when we have available for use a procedure which has been approved repeatedly by the Supreme Court of the United States and which has been successfully utilized by this court. It is not an overstatement to say that the Supreme Court of the United States has been amply solicitous of the rights of persons accused of crime. If that Court had felt that the admission of evidence such as confessions or items taken from the person of the defendant without probable cause necessitated automatic remand for new trials rather than utilizing the procedure employed in Jackson v. Denno, *Sims I, Sims II, Wade* and *Shotwell,* it is reasonable to conclude that said Court would have ordered those cases reversed and remanded for new trial. Instead, the Court found that the rights of those defendants were protected by having the trial court conduct an additional hearing in which additional testimony could be heard and a finding then made on admissibility of the evidence in question. Not only did the Supreme Court reach that conclusion but it also said in Jackson v. Denno, as previously noted, that to do otherwise "would not comport with the interests of sound judicial administration." I completely agree with that viewpoint and at this time would by order direct the trial court in these two cases, as we have done on previous occasions, to conduct a further hearing at which the State and the defendant would be given an opportunity to present evidence in addition to that contained in the transcript of the record on appeal. The trial court then would make an express finding as to whether Deputy Ivy had probable cause to arrest defendant.

Paraphrasing what the Supreme Court said in Jackson v. Denno, I would hold that Howell is entitled to a reliable determination concerning the existence of probable cause before evidence taken incident to his arrest is admissible in evidence. Unless the evidence shows and the court finds therefrom that there was probable cause for his arrest, articles taken from him incident to that arrest are not admissible in evidence against him. He is now entitled to a hearing in the trial court for the purpose of determining whether there was probable cause for his arrest. It does not follow, however, that he automatically is entitled to a complete new trial including a retrial of the issue of guilt or innocence. If, at the conclusion of an evidentiary hearing in the trial court on the probable cause issue, it is determined that there was probable cause for his arrest so that articles taken from his person at that time incident to that arrest are admissible in evidence and properly to be considered by the jury, there is no constitutional necessity at that point for proceeding with a new trial because Howell already has been tried by a jury with this evidence placed before it and has been found guilty. If the jury relied upon such evidence, it was

in that event entitled to do so. Of course, if the trial court at an evidentiary hearing redetermines the facts and finds that there was not probable cause for Howell's arrest, then the evidence taken from him incident to that arrest was not admissible in evidence and there must be a new trial on guilt or innocence without those articles being received in evidence.